# Cases

HENRY B. SHERIDAN, Appellant, v. THE SHERIDAN ELECTRIC LIGHT COMPANY OF NEW YORK, Appellant, AND HENRY C. ELLIS AND Others, Respondents.

*Right of a stockholder to bring an action against a corporation and its officers misappropriating its funds — right of the corporation to appeal from a judgment against the plaintiff — contract by the agent of a corporation — when he cannot appropriate benefits intended for the corporation.*

This action was brought by the plaintiff, as a stockholder of the Sheridan Electric Light Company, to recover, on behalf of the corporation, moneys which had been received by the defendants Kendrick and Shepard, as its agents, and had been misappropriated by them, with the aid, assistance and concurrence of the other individual defendants, who were officers of the corporation. The corporation was made a party defendant. It did not serve an answer, but upon the trial of the action, when it had passed into the hands of other officers, it appeared and presented objections and took exceptions similar to those presented and taken by the plaintiff, and joined with him in moving for a new trial.

*Held*, that the company had a right, under section 1294 of the Code of Civil Procedure, to appeal from a judgment against the plaintiff, as a party injured and aggrieved thereby.

*Innes* v. *Purcell* (58 N. Y., 388); *Valentine* v. *Myers, etc.* (36 Hun, 201), distinguished.

Kendrick and Shepard were authorized by a letter, addressed to them by the president of the company, to go to Ohio and there form an electric light corporation, to which was to be delegated the right to organize subordinate companies in that State which were to use the patents owned by the New York corporation. The letter provided that "each company must also purchase, before the licenses are granted, from this company, treasury stock to the amount of five per cent of the capital of such company. That is to say, should the capital stock of a company be $100,000, then such company must purchase and

pay cash at par value, $5,000 treasury stock of the Sheridan Electric Light Company of New York, and in the same proportion, be the capital more or less; provided, however, that no single company shall be obliged to purchase more than ten thousand dollars worth of the aforementioned stock."

Acting under this authority, a corporation was organized by these agents in Ohio, with a capital of $1,000,000, divided into 10,000 shares of $100 each. By the agreement made by the agents, 3,500 fully paid up shares of the new company's stock was to be transferred to the New York corporation, and the sum of ten dollars upon each share of $100 of the residue of the stock was to be paid to such New York corporation in cash for the right to use and sell the electric light lamps and dynamos under its patents. Pursuant to this agreement, the subscribers thereto paid to the agents, for the New York company, the sum of $65,000, of which the agents paid to the New York company the sum of $10,000, and retained the residue thereof under a claim that they were entitled so to do under the letter sent to them by the president.

*Held,* that the claim could not be sustained.

Appeal from a judgment in favor of certain of the defendants, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*E. D. McCarthy, Daniel B. Childs* and *A. W. Van Winkle,* for the appellants.

*Lewis Hurst, William T. Safford* and *A. P. Bates,* for the respondents.

Daniels, J.:

The action was brought by the plaintiff as a stockholder and officer of the Sheridan Electric Light Company, to recover on behalf of the corporation, moneys which had been received by the defendants, Oscar C. Kendrick and Earl S. Shepard, as agents of the company, and which it was alleged had been misappropriated by them, with the aid, assistance and concurrence of the other individual defendants. The other individual defendants were officers of the corporation, and had been applied to by the plaintiff to bring this action against the agents for the recovery of the money in dispute. They refused to do so, and were alleged to have colluded with the agents in its misappropriation. For these reasons, the plaintiff, as a stockholder, and himself, also an officer of the corporation, brought the action, making the company, as well as the parties designed to be charged, defendants in the suit. And upon

this state of facts he was authorized to maintain and prosecute the action in this form.    For where the officers of a corporation charged with that duty refuse to prosecute an action in a proper case, or the corporation itself is under the control of the officers, whose misconduct is to be made the subject of the action, the stockholders, "have a standing in a court of equity to sue in their own names, making the corporation a party defendant." (*Brinckerhoff* v. *Bostwick*, 88 N. Y., 52, 56; *Young* v. *Drake*, 8 Hun, 61; *Hawes* v. *Oakland*, 104 U. S., 450.)

This action upon the facts alleged was in form at least maintained by this principle. In it the plaintiff was permitted to allege as a ground of recovery the right of action, vested in the corporation. It was to enforce its right, which it was prevented from doing by the other officers of the corporation, that the plaintiff instituted his suit. And the entire ground of the action was whether the corporation was entitled to recover upon the facts alleged and proved in the case. If it was, then the plaintiff was entitled to maintain his action, and a judgment to that effect should have been recovered in it. The cause of action litigated upon the trial was whether such a right of action as was alleged was made to appear by the proof or not. The verdict in the case was in favor of the contesting defendants. The company, at the time of the trial, had passed into the control of other officers, and it accordingly acquiesced, as far as that practically could be done, in the action brought by the plaintiff, and then concurred with him in the assertion of its right to recover against the defendants. As this right was defeated at the trial, the company, as well as the plaintiff, was entitled to appeal from the judgment and the order denying a new trial, for the allegations contained in the plaintiff's complaint disclosing the right of action were in legal effect those of the company itself, but which it was not permitted to make, by reason of the misconduct of the other officers of the corporation. And when the verdict was recovered by the defendants, the company was injured and aggrieved by that judgment, if, in truth, a right of action was maintained by the evidence upon the trial. And being so aggrieved, it had, under section 1294 of the Code of Civil Procedure, with or without the plaintiff himself, the right to appeal from the judgment. Such an appeal has been provided for in unqualified

language, including any party who may be aggrieved by the judgment or order, provided it shall not have been entered by default. The judgment and order appealed from in this case were neither of them entered by default, but upon a contest made at the trial, to which the company was a party, under the allegations contained in the plaintiff's complaint.

The right to appeal in this action is distinguishable, by this material circumstance, from the cases of *Innes* v. *Purcell* (58 N. Y., 388), *Valentine* v. *Myers, etc.* (36 Hun, 201), and others cited by the respondents' counsel to sustain the objection that the company had no right to appeal from this order and judgment. Those cases relate to mere defaults where the right of the successful party was in no manner contested, and plainly do not include an action of this description. In this case the company as well as the plaintiff himself appeared upon the trial, presenting like points in favor of maintaining the action and taking exceptions to the rulings of the court construing the letter relied upon as a contract, by which both were in effect deprived of the right to maintain the suit. After the judgment was recovered, both the plaintiff and the company joined in a motion for a new trial, and that was denied. So far from there being a mere default in the case, therefore, by the company, it appeared to be on the alert at all points to take advantage of and enforce its rights. It was not necessary that an answer in the action should have been presented by it. That could not at the time for answering be done, because its management and control were subject to the disposition of officers who were hostile to its asserted right. And it was permitted to be brought into court by the individual plaintiff substantially for this reason, as a party in whose favor he asserted the right to have this action maintained. Its rights were the meritorious cause of the action, and when they were defeated by the verdict, it was the party aggrieved by that result, and it was in a situation to question its legality by its exceptions and the motion which was made and also by the appeals which have been taken.

It has been urged in the points of the respondents' counsel that the plaintiff himself has been stayed by an order made since the trial requiring him to file security for costs, but no statement of that fact has been found in the papers outside of the points which

have been presented, and it accordingly cannot be considered as entitled to any effect upon the disposition of the appeals.

The question therefore arises whether, under the evidence as it was given upon the trial, the plaintiff and the company were deprived of the right to maintain the action by any improper rulings made in or by the final disposition of the case. The proof tended to establish the facts that the two defendants, Kendrick and E. L. Shepard, had been empowered by the company to form an electric light corporation in the State of Ohio. Their right to act depended upon a letter addressed to them by Ellis, the president of the company, and dated on the 8th of February, 1882. This letter authorized these two defendants upon certain terms to organize an electric light company for the State of Ohio, to which was to be delegated the right to organize subordinate companies in that State. When the company to be organized by these defendants was incorporated, then the rights secured by the defendant company under patents issued to the plaintiff, were to be vested in such company. And as a partial consideration for the rights and privileges to be conferred upon the company incorporated under the employment of these two defendants, it was provided in this letter that " each company must also purchase, before the licenses are granted, from this company, treasury stock to the amount of five per cent of the capital of such company. That is to say, should the capital stock of a company be $100,000, then such company must purchase, and pay cash at par value, $5,000 treasury stock of the Sheridan Electric Light Company of New York, and in the same proportion, be the capital more or less; provided, however, that no single company shall be obliged to purchase more than $10,000 worth of the aforementioned stock."

These two defendants under their authority proceeded to organize a corporation at Cleveland under the laws of the State of Ohio. By the proposals under which that organization was finally effected, the company so to be organized was to pay thirty-five per cent of its shares of $100 each, as fully paid non-assessable stock, to the order of the Sheridan Electric Light Company. And upon the residue of its stock ten dollars a share, of $100 each, was to be paid " as purchase-money for the right to use and to sell in and through the State of Ohio the electric light and lamps and dynamo machines

for electric light under the patents and assignments now held by the said Sheridan Electric Light Company of New York, as well as all future improvements in the same." This proposition was accepted by persons residing at Cleveland, in the State of Ohio, who agreed " to pay to the order of the said Sheridan Electric Light Company of New York, on or before the several dates specified in section 4 of this article of agreement, the respective sums subscribed hereto by us and set opposite our names." These sums included $5,000 for each of the subscribers, making in all the sum of $65,000. Of this sum $10,000 was paid by these agents to the New York Electric Light Company, and the residue was appropriated to their own use. Persons who paid portions of the money were examined as witnesses in the action and testified that their payments were made to these two defendants (one of whom, however, was not served with the summons in the action), for the New York Electric Light Company. The payments were made in checks or drafts payable to the order of the company. And under the authority and indorsement of its officers, the money was drawn upon the checks or drafts, and the excess over the $10,000 paid to the company was retained and appropriated to their own use by the two agents. They, as well as the other defendants, through whose acts they were enabled to make this appropriation of the money, insisted upon their right to do so under the letter of February 8, 1882, and before that was done negotiations were made between the agents and two of the officers of the company, under which the right to use this money in this manner was supposed to have been derived. But these negotiations did not extend the right of the agents to the moneys beyond that derived under the letter of the eighth of February. What the agents asked for was a paper or acknowledgment " guaranteeing to us the excess in cash and stock over and above the contract stipulated." This letter was accompanied with the form of an agreement, which it was desired should be signed, by which the officers of the company should " promise and agree that for all excess on all checks, drafts for money and certificates of stock, drawn to our order, or issued in our name, over and above the amounts in kind stipulated in the contract of February 8, 1882, mentioned above, we will at once, upon receipt of the same, remit such excess to the order of the said O. C. Kendrick and E. L. Shepard,

as properly and of right belonging exclusively to them." And this resulted in securing an answer from the newly elected president of the company, in which it was stated that "the contract made with you on the eighth of February specifies the amount to be paid this company, any excess, whether in stock of this company or in cash or stock of branch companies, belongs to you, and should the same be received by us it will be immediately transferred to you."

The right of the agents to the moneys obtained upon the acceptance of their proposal, and the organization of the company at Cleveland, must accordingly depend upon the letter of the 8th of February, 1882, and the portion of the letter defining that right has already been given. By this part of the letter, the Sheridan Electric Light Company was declared to be entitled for the purchase-price of its treasury stock, to be purchased by the new company, to the sum of $5,000, on $100,000 capital of the company so to be newly organized, and in the same proportion, whether the capital should be more or less than this sum, but the company to be organized was not obliged to purchase more than $10,000 worth of such treasury stock. The company, which was organized through the action of these agents, was incorporated on the basis of a capital of $1,000,000, divided into 10,000 shares of $100 each. And the moneys which were paid by the subscribers, amounting to this sum of $65,000, were paid for the purpose of making the organization, and deriving the rights and privileges proposed to be secured through the offers made by the agents. They did accordingly pay to these agents more than the sum of money which the Cleveland company, on the basis of its capital, were obliged to pay under the terms of the letter of the eighth of February, and all that payment under, the evidence was made for the benefit of the Sheridan Electric Light Company. It was obtained from the subscribers under the authority which this company had permitted these agents to exercise, and having obtained it in that manner, they could not defeat the right of the company to the money by objecting that they had secured more from the Cleveland company than it was, as a matter of fact, obliged to pay. But whatever they obtained under the authority with which they had been invested, over and above what they were permitted to retain for their own services,

belonged to the Sheridan Electric Light Company. The agents could not take advantage of their employment and authority to obtain the money of the subscribers organizing the Cleveland company in this manner and then withhold it from the Sheridan Electric Light Company. They acquired it by virtue of their position and in their relation of agents to this company. And whatever they secured in that manner, even if it exceeded what by the language of the letter they were obliged to insist upon, belonged to the principal, for an agent will not be permitted to make a profit out of the authority conferred upon him by his principal, and withhold the advantage from the principal. The amount which was to be paid to the principal in this case was the five per cent received, whether on more or less than the sum of $100,000, for that is what is specified to be payable to the company by the letter of the eighth of February. And the agents were not relieved from making the payment because the Cleveland company, or the associates organizing it, were not obliged to have paid more than the sum of $10,000. It was the excess beyond the amount so made payable to the Sheridan Electric Light Company, whether in cash or stock, that the agents were permitted to retain. They did retain that, and also the sum of $55,000 obtained from the associates of the Cleveland company.

The court at the trial held that the Sheridan Electric Light Company was entitled to no more than the sum of $10,000 in any event under the letter of the eighth of February. To that both the plaintiff and the company excepted, and the exceptions so taken were urged upon the consideration of the court as grounds for a new trial in the action. These exceptions seem to have been well founded, and both the judgment and the order denying a new trial should be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order reversed, new trial ordered, costs to abide event.