Daniels, J.
The plaintiff prosecuted this action as the daughter and heir at law of Edward Jones, to establish her right and interest, and those of the other heirs at law and next of kin of the testator, to the proceeds of real estate conveyed to the defendant William B„ Whiteman and situated on One hundred and fifty-fifth street, in the city of New York.
He took the conveyance of the land in April, 1872, and in 1876 he conveyed the same land to Andrew B. Stiles, who with his wife conveyed the property to the defendant Mary Whiteman, the wife of the original grantee. After that, and in March, 1879, Mary and William B. Whiteman conveyed a portion of the same premises to John S. Maguire, for which they or he received the purchase price. Edward Jones died in July, 1875, and by his will he nominated and appointed his widow, Elizabeth Jones, and William B. Whiteman, who was his brother-in-law, the executors of his estate, and letters testamentary were issued to them. The estate was afterwards settled before the surro *44 gate, but no account was made in the ■ settlement of any interest which Jones had either in the proceeds of the property that was sold or the residue that remained in form at. least vested in the defendant Mary Whiteman.
The plaintiff, as the foundation of her action, alleged that this real estate was purchased as a partnership venture by her father, Edward Jones, the defendant William B.Whiteman and J Bomaine Brown
That the object of its purchase was to hold it for an ad - vanee in its market price, and upon its sale to divide the proceeds over and above the investment and expenses between these parties. It was further claimed that Brown had sold out his interest in the property and its proceeds te Edward Jones, constituting him entitled to two-thirds of the advance upon the joint venture, and the defendant William B. Whiteman to the remaining one-third.
As the allegations made by the plaintiff were found upon evidence tending to support them to have been correctly made, she was entitled to maintain this action. For the defendant, who held the nominal title to the property, was-very clearly complicated with the wrong of her husband, who was one of the executors of the estate, and being concerned in a diversion of the property from the object for which it had been purchased and held, he could not, as an executor of the estate, be expectéd to bring or maintain an action to disaffirm the title of his wife, and the widow, who-was the executrix with him of the estate, together with thn other heirs at law of Edward Jones, declined to join in the action to secure a sale of the property and the division of its proceeds.
The plaintiff, with these facts established in her favor, and which the evidence as well as the admissions in the pleadings directly tended to establish, was authorized to bring the action to maintain her rights as well as those of the other heirs at law and next of kin of the deceased testator.
This authority to do this has been sustained by the case of Bate v. Graham (1 Kernan, 237), and it is in harmony with the rule stated and followed in Memphis City v Dean (8 Wall. U. S. Rep , 64), and Hawes v. Oakland (104 U. S. Rep. 450.)
If the defendant Whiteman took and held the title to the property under the agreement which was alleged, and the evidence tended to prove that it was bought and to be sold for the joint benefit of these three persons, then a partnership m the enterprise was established, as it could be by the oral evidence which the courts have sanctioned as sufficient for this purpose. Babcock v Read, 50 N Y Superior Ct. Rep., 126; affirmed, 99 N Y . 609
*45 There was evidence given upon the trial in the contest over this part of the action which supported the conclusion of the court that the property had been so obtained, and that the testator had also acquired the interest of Brown, the other party, to the advantage of its purchase and sale.
Evidence was also given from which it was found that Jones had paid his portion as well as the portion of Brown of the purchase price, but which was a still more closely «on tested fact m the case. The payment was denied by Whiteman and his wife, who alleged that Whiteman himself had paid the entire purchase price of the property, And to substantiate what was claimed in their behalf in this respect, evidence was given of the financial condition of Edward Jones, the testator, in and subsequent to the year 1872 from which it was insisted on behalf of the defendants that he was insolvent and not in condition to make payment of any part of the purchase price of the property So far as the direct testimony in the case went it supported the allegation that Whiteman himself had madé these payments, and that Jones at no time reimbursed him for making them, but facts were proved inconsistent with the correctness of this testimony and from which the court was at liberty to find that Jones had contributed the money payable by himself and Brown to carry forward this joint speculation.
When the defendant Whiteman was sworn and examined as a witness in behalf of himself and his wife, he was asked whether any one ever reimbursed him for any part of the taxes, expenses or purchase money. This was objected to on behalf of the plaintiff, and the evidence was excluded. There can be no reason to doubt the correctness of the_ decision excluding it, for the question was so broad ■as to include the inquiry whether Jones himself had paid him any part of the purchase money, and this defendant was incompetent as a witness to answer that question against the plaintiff as the heir at law and next of kin of the deceased testator. He was then asked directly whether Jones paid any part of the purchase money of that property.
This question was more direct and pointed than the ■other, and was directly within section 829 of the Code of Civil Procedure. Following that, the same witness was asked whether he knew the financial condition of Jones the testator in the years 1872 and 1875, which included the periods when Jones paid, if he paid at all. These questions were objected to as incompetent to be put to this witness, and the answers to them were excluded by the court, and to the rulings excluding them these defendants excepted. The object of the inquiries was evidently to add further *46 weight and effect to the testimony already in the case upon the contested fact of the alleged insolvency of Jones and his inability to pay any of his proportionate part of the cost of the property. If the evidence had been admitted and the answers had been favorable to the defendants, it would, have had a direct tendency to maintain the position taken in their behalf that Jones was insolvent and not in a condition to make payments upon or towards the price of the property, and that he consequently had not done so. The evidence was not objected to on the ground that it was not material to the case, as indeed it could not have been, bub solely as incompetent, while it evidently was competent for the defendants to make further proof of this fact in addition to the evidence previously given on both sides concerning the financial ability of Jones.
The evidence proposed to be given did not tend directly, although it may have had an indirect effect, to prove a personal transaction between Jones and the defendant Whiteman. But this indirect effect of the evidence was not sufficient to render this witness incompetent to give it. This section of the Code declared him to be incompetent to give evidence concerning any conversation or transaction with the deceased testator against the plaintiff. But it has not been construed to include collateral testimony relating to other facts, not dependent upon the evidence of the deceased party, but still having a tendency to establish the right or maintain the defense of the party from whom the evidence is proposed to be derived.
Upon this subject and as the proper construction of the section, it was declared in Pinney v. Orth (88 N. Y., 447, 457) that “The primary intent of this prohibition is very apparent, and is to prevent a surviving party from proving by his own testimony a personal transaction or communication between himself and a deceased person, which, but for the prohibition, he might do without fear or possibility of contradiction. The language of the prohibition is sufficiently broad to prohibit the survivor from testifying that any particular communication or transaction did or did not take place personally between himself and the deceased, but there we think the prohibition ends and that it does not preclude the survivor from testifying to extraneous facts or circumstances which tend to show that a witness who has testified affirmatively to such a transaction or communication has testified .falsely, or that it is impossible that his statement can be true, as, for instance, that the survivor was at the time absent from the country, where the transaction is stated to have occurred, and that so long as the survivor refrains from testifying to anything that passed or did not pass personally between himself and the *47 deceased, it is not a valid objection to his testimony that the facts which he states bear upon the issue, whether or not the personal transaction in question took place, or upon the truth of the testimony by; which such transaction is sought to be proved against him.” And within this construction the defendant Whiteman was a competent witness to testify to the financial condition of Jones, although it would tend to maintain his defense in the action. For it was not a fact dependent alone upon the knowledge of Whiteman or directly connected with any conversation or transaction had between the witness and Jones. It was an extraneous fact not peculiarly within the knowledge of either, and in no manner dependent upon personal evidence of the deceased, and capable of being proved as well by the defendant as by any other person. These questions should have been allowed to be answered, and by excluding the answers the defendants may very well have been deprived of evidence having an indirect tendency by proving the insolvency of Jones to establish the fact that he could not and did not pay anything towards the price of this property, and was therefore not entitled to a sale of it, or to participate in its proceeds.
The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.
Van Brunt, P. J., and Brady, J., concur.