STARR v. SHEPARD.

1. TAXATION—TAX SALES—VALIDITY.

The sale of a mill assessed at $8,000 for a tax of less than $200, the mill at the time containing various machinery worth more than the amount of the tax, and which might have been separately sold, is void.

2. INJUNCTION — RIGHT TO MAINTAIN — ADEQUATE REMEDY AT LAW.

Stockholders of a limited partnership association, organized under chapter 160, 2 Comp. Laws, have not an adequate remedy at law, by actions of replevin or trover, so as to bar them of relief in equity by way of injunction, where a purchaser of the property of the association at a void tax sale is removing it; the title to the property not being in the stockholders individually, but in the association.

3. CORPORATIONS — STOCKHOLDERS' SUIT — RIGHT TO MAINTAIN—
APPLICATION OF RULE TO LIMITED PARTNERSHIP ASSOCIATIONS.
  Stockholders of a limited partnership association, organized
    under chapter 160, 2 Comp. Laws, have a right analogous to
    that of stockholders of a corporation, to maintain a suit in
    equity to enforce a right belonging to the association where
    the directors and officers refuse, or, by inertia equivalent to
    refusal, neglect to act.

Appeal from Calhoun; Hopkins, J. Submitted May 2,
1906. (Docket No. 41.) Decided July 23, 1906.

Bill by Marshall H. Starr and others against Thomas
Rook Shepard and others to restrain the removal of cer-
tain property. From a decree for complainants, defend-
ant Shepard appeals. Affirmed.

The principal facts, briefly stated, are as follows: In
December, 1901, defendants Steudell, Peavy, and Pang-
burn filed articles of association as "The Sanitary My-
Food Company, Limited," in which articles the character
of the business to be conducted was stated to be "to own
the necessary lands, buildings, and other property, con-
struct the necessary buildings, manufacture, and sell all
kinds of bakery goods and foods, nut food cereal and
other substitutes for coffee." Presumably, the association
was organized under chapter 160, 2 Compiled Laws of
1897. The capital stock was $500,000, and of this
$201,000 was in some manner contributed, or claimed to
have been, at or about the time of organization. The
articles of association named Steudell as chairman, Peavy
as secretary, and Pangburn as treasurer. The persons
above named proceeded to offer for sale the stock of the
association. They issued certificates for stock sold, and
among others issued certificates to the complainants, and
to defendants Foote, Grace, Goodrich, Bosley, Arndts,
and Shepard, and to themselves. The office of the com-
pany was fixed in the articles at the city of Battle Creek,
where its principal office has been maintained. An

amendment to its articles, made in 1902, increased the number of the board of managers from three to five. None of complainants are members of the board of managers, or otherwise connected with the management of the business of the association. In April, 1902, the company purchased a leasehold interest in certain premises, and in the same conveyance the property known as the Hurd Mill, in Marshall, Mich., the mill being located upon the land of the Michigan Central Railroad Company, and took and recorded a deed of conveyance therefor, dated April 16, 1902, and afterwards, in July, 1902, received another deed of conveyance of said property, which deed was taken to perfect the title. The actual consideration for the property was to be $100,000 worth of stock of the association, less the amount of a mortgage upon the property. The mortgage was paid by the association, and stock issued for the balance of the purchase price at 25 cents on a dollar. In April, 1902, the assessing officer of the city of Marshall assessed the said property upon the rolls to the Sanitary My-Food Company, Limited, as personal property, and valued it at $8,000, and there was spread against said description of property taxes to the amount of $90, levied apparently for local or city purposes. The record indicates also that upon the same property, at the same valuation, taxes to the amount of $94.83 were later in the year spread for State, county, and school purposes. Under date January 19, 1903, the city treasurer of Marshall executed an instrument in which he describes himself as the party of the first part, and for a stated consideration of $193.72 bargains and sells to Thomas Rook Shepard:

"The mill building, the storage elevator building, engine and boiler house and office building standing and being on the land of the Michigan Central Railroad Company, and near and east of their passenger depot, * * * belonging to the Sanitary My-Food Company, Limited, so-called."

It contains the further recital:

" And the said party of the first part, for himself, his heirs, executors, and administrators, do covenant and agree to and with the said party of the second part, his executors, administrators, and assigns, that the said property was sold by him at public auction or vendue after five days' notice duly posted in three or more public places in the city of Marshall, to collect taxes assessed thereon, and that the said party of the second part was the highest bidder thereof, and that the sale was held open one hour before said property was struck off to him."

April 10, 1903, the said mill was destroyed by a fire, which injured or destroyed the milling machinery and apparatus of the mill, but not materially injuring three large boilers, the large engine, the foundation of the building, and some portions of the walls. After the fire, the defendant Shepard, claiming to own the property by virtue of his purchase from the city treasurer and the said instrument issued by the city treasurer, sold the property which remained after the fire to defendant Schley, who in turn sold and transferred some of it as junk to the defendant Gumbinsky, who set about securing the property and moving it away. The Sanitary My-Food Company, Limited, had no considerable property other than said mill building and fixtures, and was in debt. The managers neglected, whether they specifically declined or not is matter of some dispute, to institute proceedings to determine and protect the rights of the company in said property.

Thereupon complainants filed the bill in this cause, setting up the facts, praying that the bill of sale given by the city treasurer to Shepard be found to have conferred no right or title or interest in said Shepard and be set aside; that Shepard and his vendees be required to return such property as they had removed, and in default to pay for what had been removed; for an injunction restraining said Shepard and his vendees from selling, incumbering, or otherwise disposing of any of said property or removing same. A temporary injunction was issued on the 21st day of April, 1903. A demurrer interposed by him hav-

ing been overruled, defendant Shepard answered the bill. The Sanitary My-Food Company, Steudell, Pangburn, and Peavy joined in an answer, the city of Marshall filed a separate answer, and Schley and Gumbinsky, purchasers of the burned material from Shepard, joined in an answer. Later on, by the application of one of the complainants, a receiver for the Sanitary My-Food Company was appointed and qualified. The cause was brought on for hearing in March, 1904, at which time proofs were taken in open court and a decree was entered in accordance with the prayer of the bill of complaint. From this decree, the defendant Thomas Rook Shepard has appealed. Upon his brief in this court, he asserts three propositions:

(1) That complainants have an adequate and complete remedy at law; (2) that the stockholders, complainants, had no right to bring this action; (3) that the tax title of appellant was set aside upon insufficient evidence.

*H. J. Cortright* (*Hatch & Page*, of counsel), for complainants.

*James L. Powers* (*James M. Powers*, of counsel), for appellant.

OSTRANDER, J. (*after stating the facts*). As to the last proposition of defendant, viz.: That the tax sale and title thereunder were not shown to be invalid, it seems a sufficient answer to say that the sale of property carried on the assessment roll at a valuation of $8,000 to satisfy a tax of less than $200, and the further fact that the title to the property assessed was not acquired by the Sanitary My-Food Company until after the time fixed by law for the completion of the assessment roll, are two facts which are made affirmatively to appear, and in the absence of explanation and of proof of the regularity of the proceedings taken to collect the tax, are sufficient to sustain the ruling that the sale was not a legal one. The evidence is undisputed that there were various portions of the machinery which might have been separately sold, and that various

machines, or parts, were worth more than the amount of the tax. This court has decided (*Leaton* v. *Murphy*, 78 Mich. 77) that the same rule must be applied in sales by a town treasurer to satisfy taxes and in judicial sales. We may therefore at once address ourselves to the first two of the propositions above stated and they may be considered together.

The instrument given by the city treasurer, and called a "bill of sale," was recorded in the office of the register of deeds for the county of Calhoun and in the office of the recorder of the city of Marshall. The bill prays that this instrument may be declared to be void, and that so much of the property as has been removed be returned, and in default of such return the value thereof may be assessed and required to be paid. It is also prayed that an injunction issue to interrupt and prevent the removal of property. It appears there was an exigency. Certain of the shareholders had applied to the secretary, who seems to have been the principal executive officer of the company, to protect the interests of the company in the property. While there was no refusal to act, there was delay, the end of which could not be foreseen. The secretary testifies that he was urged to bring suit to protect creditors, but had no money belonging to the company to pay fees with and was not inclined to advance money. The testimony warrants the conclusion that the managing officers were not in accord. There are creditors of the company whose claims amount to about $2,000, and neither funds nor other property with which to pay them. While the company is not strictly a corporation and not a partnership, the title to the property sought to be recovered was in the company, and not in complainants. It is suggested that the actions of replevin and of trover would have afforded adequate relief. The argument made by counsel for appellant expressly challenges the right of complainants to maintain either of these actions because, it is said, they did not have either a special or general title nor right to actual possession.

It is not necessary to discuss or to disagree with the rules laid down in *Hawes* v. *City of Oakland*, 104 U. S. 459, cited for appellant, upon the point that a shareholder in a corporation will not be permitted, except under certain circumstances, to enforce by suit in equity a right or remedy which belongs to the corporation itself. That case supports rather than challenges the jurisdiction asserted here. It is true, in the case at bar, that the answer of the company, after admitting the allegations in the bill to the effect that persons were removing the property of the company under false claim of right, and that those persons would have continued to remove and dispose of such property until it was all gone, asserts that the company had or has an adequate remedy at law, and denies that complainants ever importuned or requested the officers of the company to institute proceedings to obtain possession, for the company, of the property. The answer sets out that complainants were informed by the secretary that he was preparing to commence such proceedings in the name of, and for the benefit of, the company. The secretary signs the answer as solicitor for the company. His testimony has been already, in part, referred to. He further testified:

"The property was practically rendered 'junk' by the fire. All I know of a claim of Thomas Rook Shepard to the property is that he has a deed on record. Some of the property was shipped to Mr. Gumbinsky after the fire. I came to Marshall at the time. I heard that he had possession of the property, and was shipping it away, and heard from Mr. Schley that he claimed that he was purchasing the property from Mr. Gumbinsky and was shipping it to him. I went to Kalamazoo, and told him that the Sanitary My-Food Company, Ltd., owned the property, and would hold him responsible for the property, whatever had been shipped to him. I will say that the stockholders asked me to institute these proceedings, and importuned the officers of the company to start proceedings then. Mr. Alexander lived in Grand Ledge, and Mr. Powers and Mr. Alexander being interested, as soon as I knew the property had been sold, I communicated

with them, and importuned them to tell us what to do. Mr. Powers advised me to go to Mr. Gumbinsky and claim the property, and I did so. I thought that was not sufficient, and there was some delay, owing to an argument as to what proceedings were necessary to take, and nothing was done until the stockholders commenced the proceedings. I was prepared to institute the same kind of proceedings that the stockholders took. They asked me to institute the proceedings before they were begun, and were very urgent, too. They informed me that the property was being taken away, and something ought to be done immediately. There was no objection made, the officers very willingly acquiesced in the action the stockholders had taken."

Neither the company nor the stockholders are, so far as appears from the testimony, disputing, in fact, the right of complainants to proceed. It is the appellant, who claims the property under the city treasurer's sale, who is contesting. There is abundant support for the finding that the inertia of the officers and other stockholders amounted to a refusul to interfere in behalf of the company; that complainants only acted in an emergency after it seemed apparent that, without their action, the rights of the company and of the shareholders and creditors would be seriously impaired; that there was no adequate remedy at law, under the circumstances, and that the court below not only had jurisdiction to proceed in the matter but to make the decree appealed from.

The decree is affirmed, with costs against appellant.

McALVAY, BLAIR, MONTGOMERY, and HOOKER, JJ., concurred.