## No. 11,989.

### MOUNTAIN STATES PACKING COMPANY ET AL. *v.* CURTIS ET AL.

Decided October 14, 1929.   Rehearing denied November 4, 1929.

Mr. MAX D. MELVILLE, Mr. PHILLIP HORNBEIN, Mr. CHARLES ROSENBAUM, for plaintiffs in error.

Messrs. QUAINTANCE & QUAINTANCE, for defendants in error.

Mr. B. C. Hilliard, Mr. B. C. Hilliard, Jr., amici curiæ.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court and are hereinafter referred to thus, or by name. For convenience the Mountain States Packing Company is designated as the Packing Company, the Mountain States Mixed Feed Company as the Feed Company, and the K. & B. Packing & Provision Company as the K. &. B. Company.

Plaintiffs, as stockholders, brought this action against defendants to set aside certain transactions between the latter, for the appointment of a receiver for all the property of the companies, and for a temporary injunction enjoining defendants from selling or incumbering any of said property.

The court found generally for plaintiffs and ordered the Packing Company and the Feed Company, and all their property turned over to "receivers to be hereafter named." To review that judgment defendants prosecute this writ.

The related, and ofttimes interwoven, transactions of three corporations, involving hundreds of thousands of dollars and extending over a period of more than seven years, are covered by this record. There are 1,390 pages of the transcript, 700 printed pages of abstract, and 420 of briefs. The complaint covers 42 printed pages, the answer 36, the trial court's findings 34, and its decree 10. There are 44 of defendants' joint assignments of error and 14 special assignments by the K. & B. Company and Sigman. A volume might be written by way of opinion and all of it be relevant to the questions raised. All the work essential thereto has of necessity been done preparatory to this decision. However, it seems to us that

in this, as in most such cases, the entire dispute hinges upon a very limited number of crucial questions or transactions. If so, no good purpose can be served by going beyond these. We have endeavored to keep within such bounds.

The K. & B. Company is an old corporation, long antedating the others. Of its 2,500 shares of capital stock Sigman owned 850. In 1921 the Packing Company bought 1,255 of these shares, and one Duff owned the remainder.

The Packing Company was organized in 1920 with 60,000 shares of preferred stock and 60,000 shares of common. Of the latter, 23,586 were issued to Melville as trustee.

The Feed Company was organized in 1923 by the Packing Company to take over, finish, and operate a feed mill and yards. It had 5,000 shares of preferred stock and 5,000 shares of common.

Duff was indebted to the Colorado National Bank in the sum of $19,000 on the purchase price of his K. & B. stock. The Packing Company held an option on it and had indorsed his note for that amount. It was also indebted in the sum of $38,000 on its purchase of K. & B. stock, and neither it nor Duff could pay. Finally plaintiff Cooper took up the Duff note and later passed it over to Melville to enable the former to take up the Packing Company's $38,000 note. In 1926 Sigman, still holding his 850 shares of K. & B. stock, contracted with the Packing Company to purchase its 1,255 shares and to take over its option on the Duff shares, subject to the payment of said $19,000 to Melville. Thus Sigman became the purchaser of the entire stock of the K. & B. Company.

Melville was one of the organizers of the Packing Company, has always been its attorney, and is perhaps the most conspicuous figure in the transactions here involved. In 1924, 5,000 shares of the common stock of that company were issued to his law firm for services.

Aside from their demands for a receiver and for in-

junctive relief, the plaintiffs pray: (1) That the trust agreement, or instructions under which Melville held 23,586 shares of the common stock of the Packing Company, be set aside and the stock returned; (2) that the sale of the K. & B. Company to Sigman be set aside; (3) that the transfer of said 5,000 shares of the common stock of the Packing Company to Melville's firm for services be set aside.

There are, of course, numerous other demands, but, if the foregoing relief is denied, as we are convinced it must be, nothing remains of this complaint worthy of consideration unless the courts are to go into the details of the management of private enterprises and take from the directors and stockholders of corporations the duty of conducting their affairs. Such interference is, of course, illegal and intolerable.

1. It is alleged, in substance, that Melville and Stocker caused said 23,586 shares of stock to be deposited with Melville as trustee; that they kept this arrangement secret from other stockholders; that Melville thus held a majority of the outstanding shares of the common stock of the Packing Company, and that he thereby controlled all the companies and their officers and dominated all meetings of stockholders as well as directors, and particularly the annual 1927 meeting of the stockholders of the Packing Company, to which reference is more particularly hereinafter made. This was, in the beginning, the very gist of plaintiffs' cause of action. Here was the inception of all the frauds, active or constructive, charged in the complaint, the machinery which presumably made their perpetration possible, and the key by which plaintiffs interpreted every action to which serious objection was made. The prayer was that this trust transaction be "set aside and held for naught." The court denied any relief concerning it because it was a "closed transaction," but, disassociated from this portion of the complaint, much of the relief granted was wholly unjustified. The evidence showed that this stock

was returned by Melville to the Packing Company treasury more than two years prior to the inception of this action; that at every meeting after its issuance it had been in the hands of the secretary and was used only to make up a quorum; that it had never been voted on any question before the stockholders, and had never been used in the election of a director; that a full explanation of this trust was spread upon the company's books, made orally at the 1923 stockholders' meeting, and in a letter mailed October 3 of that year to all stockholders; and such evidence was undisputed. It is therefore not surprising that the trial court referred to this as a "closed transaction." With its closing the entire bottom fell out of this lawsuit. When we observe that without the lever of this trustee stock defendants were powerless to get past the stockholders with the K. & B. sale to Sigman, or the payment to Melville's law firm of the 5,000 shares above mentioned, or any other of the numerous transactions here complained of, it will be seen that this opinion might not improperly close with the foregoing statement of facts.

█ 2. It is alleged, in substance, that Melville, Sigman and Stocker conspired to loot the Packing Company by transferring its business to Sigman and its property to the Mixed Feed Company, and that the sale of the Packing Company's 1,255 shares of K. & B. stock to Sigman was in pursuance of that conspiracy, was without notice to the stockholders, and at a wholly inadequate price. Such, in substance, was the holding of the court. The evidence disclosed that, at the time of the sale, the K. & B. Company was, and long had been, losing money; that it was without credit; that thousands of dollars' worth of its paper was due and that its treasury was empty; that the sale was authorized at a board meeting of the Packing Company June 10, 1926, at which Sigman did not vote; and that during practically all of the time of the alleged incubation of the conspiracy Melville was in Mayo Brothers' Hospital at Rochester, Minne-

360

sota. But infinitely more important than all this, it appears that at the 1927 annual meeting of the stockholders, attended by more than a majority of the present plaintiffs, and three years after the trustee stock had been returned to the company's treasury, at which meeting Melville's 5,000 shares were not voted, this whole matter was thoroughly threshed out and said sale expressly and overwhelmingly ratified. That evidence is undisputed. Although a majority of the directors who authorized the K. & B. stock sale to Sigman were, under any tenable theory, disinterested, we will assume that the transaction was voidable. Even so, it was ratified and validated by said action of the stockholders, though we exclude from the vote thereon all impugned stock. That ratification could only be defeated by a showing of actual fraud affecting it or proof that the affirmative vote fell short of a majority. There is no evidence of either. The final decision as to voidable contracts of a corporation rests with a majority of its stockholders, not with a minority. 6 Thompson Corp. (3d Ed.), p. 394, §4511; 4 Fletcher Cyc. Corp., p. 3645, §2394. The trial court in its findings and decree entirely ignores this ratification and thus substitutes its own judgment for that of the stockholders in relation to a simple matter of policy in dealing with their property.

3. Melville had a retainer of $5,000 annually from the Packing Company, which did not include fees for actual litigation. Over a period of approximately seven years he drew thereon less than $4,000 in cash and during that time conducted for these concerns almost half a hundred lawsuits. After he had turned back his "trustee stock" he was issued 5,000 shares of the common stock of the Packing Company for such services. It was contended that this issue was without consideration and void. The court so held, finding that these shares were part of said "trustee stock," had been used to control elections of directors, and were held by Melville in trust, and their surrender was decreed. The only

evidence supporting such a finding is that recited by the court therein as the basis thereof; i. e., ''In the minutes of December 15, when this transaction took place, it is recited that 'Mr. Melville then stated that while he and his firm had earned this stock during the past two years' litigation, and had accepted the same in full payment therefor, still he and they would use this stock to assist their efforts in putting this company on a good, substantial, paying basis under the same general principle and policy outlined in the trust agreement which he had just surrendered.' Any reasonable man,'' continues the court, interpreting Melville's remarks so recorded, ''must conclude from this statement that Mr. Melville was intending, and the board of directors so understood that he intended, to continue in his position as trustee, holding his stock for the purpose of controlling the company in the same manner as he had done under the original trust agreement. This stock therefore is held in trust by him, is the property of the company and all its stockholders.'' We do not think the statement of Melville susceptible of any such interpretation. If the payment of this fee was not a palpable fraud, of which we think there is no evidence, we are forced to the conclusion that the order for its return was a gross injustice. It should be further observed that the finding that this stock had been used to control elections was wholly unsupported by the evidence. There never was an election contest in this corporation after its issuance, all directors having been unanimously named.

From the foregoing we think it clearly appears that plaintiffs are not entitled to the relief demanded as to any of their major contentions, and above all not entitled to have receivers appointed for these defendant companies, or any of them. Their minor contentions relate to business policies of the corporations. Those questions are for the stockholders, not the courts, and in the absence of actual fraud the decisions of a majority of

those stockholders must stand as the decisions of the corporations.

The judgment is reversed and the cause remanded to the district court with directions to dismiss it at the costs of plaintiffs.

Mr. Justice Butler not participating.