Bell, J.
The trial court stated the question involved, as follows: ' Does a minority shareholder have the right on behalf of the corporation and other shareholders to bring a suit on the cause of action alleged without first making a demand on the shareholders?
In light of the above facts, the question may be restated as follows: May a shareholder of a corporation bring a derivative suit on a cause of action which he alleges the corporation has, where it appears that a transaction which the plaintiff seeks to have set aside has expressly been made subject to the approval of and ratification by the shareholders as a body, and that it has been duly approved and ratified by á majority of all the shareholders by a resolution specifically addressed to the subject, and where the plaintiff fails to allege that he has made any demand on the shareholders as a body to rescind that action, to remove the board of directors, or to take any other action whatever on the question, and where the plaintiff fails to allege any excuse for not making any request to the shareholders ?
This is a question of first impression in Ohio, and it therefore becomes necessary to examine the law in other jurisdictions.
It has been stated as a general rule that a demand on the shareholders is a part of the intracorporate remedy that must be exhausted as a condition precedent to the bringing of a derivative suit. The rule is stated thus in 13 American Jurisprudence, 508, Corporations, Section 464: ‘ ‘ The courts will not ordinarily entertain a representative suit by a stockholder unless it plainly appears that all remedies within the corporation itself have been resorted to in vain, including application to the directors for relief and, upon refusal by those officers, a request that the stockholders as a body sue the directors or that an action be brought for their benefit.” See, also, 72 A. L. R., 628.
There are two leading cases on this question. The first is *65 the English case of Foss v. Harbottle, 2 Hare, 461, and the other is the American case of Hawes v. Oakland, 104 U. S., 450, 26 L. Ed., 827.
A concise statement of the holding of the Foss case was quoted in the opinion of the trial judge herein, as follows:
“ ‘Whilst the court may be declaring the acts complained of to be void at the suit of the present plaintiffs, who in fact may be the only proprietors who disapprove of them, the governing body of proprietors may defeat the decree by lawfully resolving upon the confirmation of the very acts which are the subject of the suit.’ ”
The trial judge then made the following comment:
“From this court’s study of Foss v. Harbottle, it seems that only one conclusion can be reached and that is, that even where it is alleged that the transaction involved fraud on the part of directors by which they personally profited, the transaction is voidable, as is usual in fraud cases, and therefore a majority of disinterested stockholders, if there is any basis for their decision, may decide that it is to the best interest of the corporation to ratify or not to sue, and that each stockholder, although he may suffer individual loss thereby, is bound because by becoming a stockholder he agreed to be bound by the action of the majority. And further that this is so, even though the charter of the corporation makes the directors the sole managers and further specifically provides that no individual proprietor, not being a director, shall on any account or pretense whatsoever, interfere in the management, but shall entirely commit, entrust and leave the same to be wholly ordered, managed and conducted by the directors.
“This interpretation of the case of Foss v. Harbottle and the subsequent English cases seems to be that given in the leading English textbook, 1 Lindly on Companies (6 Ed. 1902), 781:
“ ‘Where a fraud on the company or a breach of duty by its directors is complained of by a minority only of its shareholders, considerable difficulty arises; for a transaction which is a fraud on the company may be repudiated or adopted by it at its option, and a breach of duty by its directors may be waived or condoned by it. Hence, if a majority of the shareholders not implicated in the fraud or the breach of duty, bona *66 fide, elect to ratify or sanction the transaction which they might, if they chose, repudiate, it seems that [the] court will not interfere at the instance of the minority, but if the fraud is a fraud by the majority upon a minority, or the directors whose conduct is impeached hold a majority of votes, the court will protect such minority.’ ”
In the Hawes case, after a thorough consideration of the authorities, the court laid down the rule that a shareholder’s suit will not be entertained by a court of equity unless it is based on an ultra vires act, fraud, breach of trust, or the threat of irreparable injury. The court then imposed the additional requirement that the plaintiff must show his attempts to obtain redress within the corporation, including a demand on the shareholders, by stating:
“But, in addition to the existence of the grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.”
Plaintiff in this cause, however, contends that a demand on the shareholders is a condition precedent to the bringing of a derivative suit only where the transaction alleged is subject to ratification by the shareholders, and, that since he has alleged a fraudulent transaction, it is beyond the power of a majority of the shareholders in this instance to ratify it.
The rule of nonratification save by a unanimous vote of the shareholders is stated in the cases of Dana v. Morgan, 219 F., 313, and Hodgman v. Atlantic Refining Co., 300 F., 590, cited *67 by plaintiff. The trial court herein adopted this rule when it said, ‘ ‘ Applying the most liberal interpretation of the cases and the most liberal attitude therein expressed toward the validity of ratification of the self-serving fraud of directors, the court is nevertheless compelled to the conclusion that the peculiar facts in this case furnish no basis for a ratification of the transaction by a disinterested majority of the stockholders which would be binding upon the minority.”
This rule of nonratification has been the subject of much discussion in law review articles.
In 4 University of Chicago Law Review, 495, it is said:
“The rule apparently means that where a director or officer has injured the corporation by conduct denominated fraudulent, a vote of approval by a majority of the shareholders, however well-informed and bona fide they may be, will not divest the minority holder of his derivative cause of action. Thus interpreted, this rule rejects the principle of corporate management by the majority in a case whose sole distinguishing feature is fraud in the activity with respect to which the majority is exercising its discretion. It may be that the courts have been searching for a rule which, however drastic, might effectively check dishonesty on the part of corporate officials. This consideration, however, is insufficient to justify so extraordinary an encroachment upon the power of the majority as is embodied in the literal statement of the rule. ’ ’
Similarly, in 53 Harvard Law Review, 1368, after an examination of the authorities for the rule which was found to be weak and after a consideration of the various arguments of policy and of legal doctrine that might be advanced in support of the rule, a note concludes:
“Nevertheless, it would seem unfortunate to speak of it as a rule of law, if in the situations in which it — rather than the existence of other doctrines — controls, the nonratification rule offers neither rationale nor adequate support in stare decisis. Frequent reiteration of the statement may induce blind faith in the wisdom of its application, and the oversimplified formula— that shareholders may not ratify directors’ frauds — may become an unyielding major premise in the law of corporate powers. ’ ’
*68 In countering the argument that the rule establishes a wise policy to discourage directors’ frauds, the article points out, as follows, that experience has shown that the supposed salutory effect on corporate management is outweighed by the encouragement of nuisance litigation of the type commonly referred to as “strike” suits:
“The policy of enforcing strict honesty of directors, who occupy a fiduciary position, is undoubtedly furthered by forbidding acquiescence in their misdeeds. The knowledge that his action cannot be condoned — even by approval of a majority— and will always be subject to the scrutiny of dissenting shareholders, may deter the director who contemplates fraud. This analysis- would seem valid as to corporations where the shares are closely held in large proportions, since each shareholder has a considerable interest in policing the company officers. But where numerous small holders are the corporation owners, the chances of bona fide suit are greatly diminished, because their share in the amount which may be recovered is not commensurate with the expense involved. In this situation, the mitigated deterrent effect, of the rule must be balanced against the inevitable strike litigation engendered.”
In 31 Boston University Law Review, 165, 174, the author said:
“Although an impressive number of cases can be cited for statements that a majority of the stockholders cannot ratify a fraud upon the corporation, on analysis their authority is much weakened by the fact that the majority is frequently found not to be independent and disinterested. ’ ’
Plaintiff places much reliance on the so-called New York rule as pronounced in Continental Securities Co. v. Belmont, 206 N. Y., 7, 99 N. E., 138, 51 L. R A. (N. S.), 112, Ann. Cas. 1914A, 777. The court in that case held that, where the plaintiff alleges fraud on the part of the directors of a corporation and a substantial misappropriation of shares of stock of the corporation through a nominal purchase of property and the payment of a pretended claim for services, application to the body of shareholders is not necessary. The trial court found the conclusion in that case to be contra to the conclusion in Foss v. Harbottle, supra. We agree that it is impossible to *69 distinguish the two cases. The law in New York seems to be clear, from the Belmont case and those cases which followed it, that the actual fraud of the directors can not be ratified by a majority of the shareholders, however disinterested they may be.
It is interesting to observe that a similar action could not be maintained in New York today under Section 61 (b) of the General Corporation Law of New York (L. 1944, c. 668; amended, L. 1945, c. 869), unless the plaintiff gave security for the expenses, including attorney fees, that the corporation and the other defendants might incur in connection with the action. This provision for the giving of security, which applies to any derivative action instituted by the holder of less than 5 per cent of any class of the corporation’s stock unless the market value of the plaintiff’s shares ex-ceeds $50,000, has been found necessary in order to stem the flood of nuisance litigation caused by the New York courts’ adoption of a rule that encouraged such litigation.
Inasmuch as the question has not been settled in Ohio, it does not appear wise to adopt a rule which will inevitably plague both' the courts and the corporations of the state in “strike” litigation and, just as inevitably, require legislation to cure the abuse.
Another cogent reason against the adoption of the rule of nonratification is set out in defendants’ brief, as follows:
‘ ‘ Another positive reason against the adoption of a rule that a majority can not ratify directors’ frauds is that such a rule would make it possible for a minority to deprive the corporation of a valuable right. Normally, a defrauded person has the option within a reasonable time to avoid the fraudulent transaction. 24 American Jurisprudence, 8, Fraud and Deceit, Section 190. The option may itself be of considerable value: it may develop that it is to the advantage of the defrauded party, not to avoid the transaction, but to affirm it. The adoption of the nonratification rule, however, would deprive the corporation of this option. So long as one shareholder wished to complain of the fraud, no majority could elect to affirm, no matter how much it might be to the advantage of the corporation as a whole to do so. The possibilities in such a situation for a nuisance suit are apparent.
*70 “To indicate the application of this principle to the present case, it need only be supposed that the value at the present time of the Manufacturers stock is less than the price paid for it of $27.50 per share. For all that appears from the pleadings, this may well be the case, since the plaintiff’s allegations as to the value of the stock relate only to its value on December 23, 1949, the date of the sale, although his petition was not filed until August 24,1951 — 20 months later. The plaintiff in this cause seeks to’ rescind the sale. If that were done, the stock would be returned to Manufacturers, and Manufacturers .would be required to return the purchase price to the' persons who purchased the stock. Therefore, if the stock is now worth less than the price that was paid for it, and aside from any other considerations, it- would clearly be to the pecuniary interest of the corporation to affirm rather than rescind the transaction. Under the theory of nonratification of directors’ frauds, however, a single shareholder, for whatever purposes of his own, could prevent the corporation from doing so. We submit that a rule that would make such a result possible is unsound and should be rejected.”
In addition to the reasons advanced above for not adopting the nonratification rule, there is a respectable line of authority that a majority pf the shareholders have the power to ratify directors’ frauds. Thus in Mountain States Packing Co. v. Curtis, 86 Colo., 355, 281 P., 737, the trial court found that there had been actual fraud, and that, pursuant to a conspiracy to loot the corporation by transferring its business to one of the directors, there had been a sale to the director of 1,255 shares of stock in another company owned by the corporation, without notice to the shareholders and at a wholly inadequate price. The Supreme Court of Colorado held that the ratification of the transaction by the shareholders, after full discussion and by a large majority, was conclusive and, at page 360, said “that ratification could only be defeated by a showing of actual fraud affecting it or proof that the affirmative vote fell short of a majority.”
In Kessler v. Ensley Co., 123 F., 546, the charge was actual fraud, involving the sale of realty owned by the corporation to *71 another company controlled by the corporation’s trustees. The court sustained a demurrer to the petition, stating that the subsequent action of the majority of the shareholders in refusing to bring suit to set the transaction aside was binding on the corporation and the minority shareholders, where there was no claim of fraud on the part of the majority. The court pointed out, at page 558:
“The power must reside somewhere in every corporation, when it has been defrauded, whether by its own officers or third persons, to determine what course it will pursue with reference to the fraud. The fact that the corporation has been defrauded does not strip it of power to elect to stand upon the transaction as made. Every wronged person, who is sui juris, has that right against the wrongdoer. If the corporate tribunal exercises its judgment upon the question honestly, and is not adversely interested, or under the control of other influences which sway it from a fair and impartial judgment, from the standpoint of the interest of the corporation itself, a decision not to disturb the fraud, unless it evinces such recklessness and negligence as amounts to bad faith, is not a fraud upon the objecting stockholders, though it results in a refusal to redress a fraud upon the corporation.”
Later, on a demurrer to an amended petition, the court found that an amendment cured a defect in the original bill, but it reaffirmed in even clearer terms its former conclusion as to ■ the power of a majority of the shareholders to ratify a fraud. The subsequent opinion is found in 129 F., 397, where the court said, at page 400: ‘ ‘ The assertion that a disinterested corporate body or majority of stockholders of a business corporation are powerless in any case, against the objection of a single stockholder, to ratify actual fraud, as to a matter intra vires, upon the corporation by one of its own officers, by which he obtains some of its property, can not be accepted as a correct enunciation of the law.”
Plaintiff contends, however, that those cases are inapplicable in Ohio in the light of Goodin v. Cincinnati & Whitewater Canal Co., 18 Ohio St., 169, 98 Am. Dec., 95. A careful reading of that case reveals that the court carefully confined itself to *72 a statement that interested shareholders, no matter how large a proportion they might be, could not prevent the remaining shareholders from invoking the aid of a court of equity.
The court said, at page 183:
“No matter if a majority of the stockholders, as well as himself, have personal interests in conflict with those of the company. He does not represent them as persons, or represent their personal interest. He represents them as stockholders, and their interests as. such. He is trustee for the company, and whenever he acts against its interests — no matter how much he thereby benefits foreign interests of the individual stockholders, or how many of the individual stockholders act with him — he is guilty of a breach of trust, and a court of equity will set his acts aside, at the instance of stockholders or creditors who are damnified thereby. Any act of the directors by which they intentionally diminish the value of the stock or property of the company is a breach of trust, for which any of the stockholders or creditors may justly complain, although all the other stockholders and creditors are benefited, in some other way, more than they are injured as such.”
In that case it was alleged that two railroad companies had purchased a majority of a canal company’s stock and were using its control to acquire the assets of the canal company for an amount far below their actual value. The case, therefore, involved a fraud on the part of the majority shareholders. Obviously, in such a case, the interested majority could not prevent the minority from’ bringing suit. There is nothing in the language of the court, however, which suggests that a charge of fraud on the part of the directors is sufficient to transfer the control of the company from a majority of the shareholders to a minority, if the majority is in a position to exercise a disinterested judgment.
It would thus appear, both on reason and authority, that a disinterested majority of the shareholders of a corporation have the power to ratify directors ’ frauds provided there is no actual fraud in either inducing or effecting such ratification.
Since a majority of shareholders can ratify the actions of the directors, and since, in the present cause, a majority have *73 so ratified, it is essential that some affirmative action- be taken by the plaintiff in order to negate that ratification. That affirmative action must be in the form of a demand made on the shareholders.
The power of the majority of shareholders to technically ratify is, however, not the only test for determining the necessity of a demand upon the body of shareholders before a derivative suit can be brought. The shareholders are entitled to an opportunity to decide for themselves whether the best interest of the corporation will be served by bringing such a suit.
In the case of S. Solomont & Sons Trust, Inc., v. New England Theatres Operating Corp., 326 Mass., 99, 93 N. E. (2d), 241, the court said:
“The question whether it is good judgment to sue is-quite apart from the question of ratification. This is a distinction of substance and not of form.”
In regard to the decision to sue or not to sue, the trial judge herein, whose language we hereby adopt, said:
“The primary right to make a decision to sue or not to sue is inherent in the corporation. With regard to other transactions the power and responsibility of making such a decision rests, in the first instance, with the majority of the stockholders. There is no sound reason to shift the making of such a decision, when the directors are charged with self-serving fraud, from the majority to one or more stockholders, if the majority is disinterested and acts in the bona fide belief, reasonably justified by the alleged facts, that the corporation will be seriously injured by bringing a lawsuit.”
For the reasons above stated, the judgment of the Court of Appeals is modified as to the holding that a unanimity of shareholders is required to ratify the acts of the directors, and, as so modified, is affirmed.

Judgment modified and, as modified, affirmed.

Weygandt, C. J., Matthias and Hart, JJ., concur.
Taft, J., concurs in paragraphs one and two of the syllabus and in the judgment.
Zimmerman, J., dissents.
Stewart, J., not participating.