## HAWES *v.* OAKLAND.

1. A shareholder in the Contra Costa Water-works Company brought his bill in equity against the city of Oakland, the company, and its directors, alleging that the company was furnishing the city with water, free of charge, beyond what the law required it to do, and that the directors, contrary to his request, continued to do so, to the great injury of himself, the other shareholders, and the company. *Held*, that in such a case there must be shown: 1. Some action or threatened action of the directors or trustees which is beyond the authority conferred by the charter, or the law under which the company was organized; or, 2. Such a fraudulent transaction, completed or threatened, by them, either among themselves or with some other party, or with shareholders, as will result in serious injury to the company or the other shareholders; or, 3. That the directors, or a majority of them, are acting for their own interests, in a manner destructive of the company, or of the rights of the other shareholders; or, 4. That the majority of shareholders are oppressively and illegally pursuing, in the name of the company, a course in violation of the rights of the other shareholders, which can only be restrained by a court of equity. 5. It must also be made to appear that the complainant made an earnest effort to obtain redress at the hands of the directors and shareholders of the corporation, and that the ownership of the stock was vested in him at the time of the transactions of which he compains, or was thereafter transferred to him by operation of law.

2. It is the duty of the Circuit Court to dismiss the suit if the parties thereto have been improperly or collusively made or joined for the purpose of creating a case of which that court would have cognizance.

APPEAL from the Circuit Court of the United States for the District of California.

The facts are stated in the opinion of the court.

*Mr. Charles N. Fox* for the appellant.
*Mr. Henry Vrooman* for the appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from a decree in chancery dismissing the complainant's bill, wherein he, a citizen of New York, alleges that he is a stockholder in the Contra Costa Water-works Company, a California corporation, and that he files it on behalf of himself and all other stockholders who may choose to come in and contribute to the costs and expenses of the suit.

The defendants are the city of Oakland, the Contra Costa Water-works Company, and Anthony Chabot, Henry Pierce,

Andrew J. Pope, Charles Holbrook, and John W. Coleman, trustees and directors of the company.

The foundation of the complaint is that the city of Oakland claims at the hands of the company water, without compensation, for all municipal purposes whatever, including watering the streets, public squares and parks, flushing sewers, and the like, whereas it is only entitled to receive water free of charge in cases of fire or other great necessity; that the company comply with this demand, to the great loss and injury of the company, to the diminution of the dividends which should come to him and other stockholders, and to the decrease in the value of their stock. The allegation of his attempt to get the directors to correct this evil will be given in the language of the bill.

He says that "on the tenth day of July, 1878, he applied to the president and board of directors or trustees of said water company, and requested them to desist from their illegal and improper practices aforesaid, and to limit the supply of water free of charge to said city to cases of fire or other great necessity, and that said board should take immediate proceedings to prevent said city from taking water from the works of said company for any other purpose without compensation; but said board of directors and trustees have wholly declined to take any proceedings whatever in the premises, and threaten to go on and furnish water to the extent of said company's means to said city of Oakland free of charge, for all municipal purposes, as has heretofore been done, and in cases other than cases of fire or other great necessity, except as for family uses hereinbefore referred to; and your orator avers that by reason of the premises said water company and your orator and the other stockholders thereof have suffered, and will, by a continuance of said acts, hereafter suffer, great loss and damage."

To this bill the water-works company and the directors failed to make answer; and the city of Oakland filed a demurrer, which was sustained by the court and the bill dismissed. The complainant appealed.

Two grounds of demurrer were set out and relied on in the court below, and are urged upon us on this appeal. They are: —

1. That appellant has shown no capacity in himself to maintain this suit, the injury, if any exists, being to the interests of the corporation, and the right to sue belonging solely to that body.

2. That by a sound construction of the law under which the company is organized the city of Oakland is entitled to receive, free of compensation, all the water which the bill charges it with so using.

The first of these causes of demurrer presents a matter of very great interest, and of growing importance in the courts of the United States.

Since the decision of this court in *Dodge* v. *Woolsey* (18 How. 331), the principles of which have received more than once the approval of this court, the frequency with which the most ordinary and usual chancery remedies are sought in the Federal courts by a single stockholder of a corporation who possesses the requisite citizenship, in cases where the corporation whose rights are to be enforced cannot sue in those courts, seems to justify a consideration of the grounds on which that case was decided, and of the just limitations of the exercise of those principles.

This practice has grown until the corporations created by the laws of the States bring a large part of their controversies with their neighbors and fellow-citizens into the courts of the United States for adjudication, instead of resorting to the State courts, which are their natural, their lawful, and their appropriate forum. It is not difficult to see how this has come to pass. A corporation having such a controversy, which it is foreseen must end in litigation, and preferring for any reason whatever that this litigation shall take place in a Federal court, in which it can neither sue its real antagonist nor be sued by it, has recourse to a holder of one of its shares, who is a citizen of another State. This stockholder is called into consultation, and is told that his corporation has rights which the directors refuse to enforce or to protect. He instantly demands of them to do their duty in this regard, which of course they fail or refuse to do, and thereupon he discovers that he has two causes of action entitling him to equitable relief in a court of chancery; namely, one against his own company, of which he is a

corporator, for refusing to do what he has requested them to do; and the other against the party which contests the matter in controversy with that corporation. These two causes of action he combines in an equity suit in the Circuit Court of the United States, because he is a citizen of a different State, though the real parties to the controversy could have no standing in that court. If no non-resident stockholder exists, a transfer of a few shares is made to some citizen of another State, who then brings the suit. The real defendant in this action may be quite as willing to have the case tried in the Federal court as the corporation and its stockholder. If so, he makes no objection, and the case proceeds to a hearing. Or he may file his answer denying the special grounds set up in the bill as a reason for the stockholder's interference, at the same time that he answers to the merits. In either event the whole case is prepared for hearing on the merits, the right of the stockholder to a standing in equity receives but little attention, and the overburdened courts of the United States have this additional important litigation imposed upon them by a simulated and conventional arrangement, unauthorized by the facts of the case or by the sound principles of equity jurisdiction.

That the vast and increasing proportion of the active business of modern life which is done by corporations should call into exercise the beneficent powers and flexible methods of courts of equity, is neither to be wondered at nor regretted; and this is especially true of controversies growing out of the relations between the stockholder and the corporation of which he is a member. The exercise of this power in protecting the stockholder against the frauds of the governing body of directors or trustees, and in preventing their exercise, in the name of the corporation, of powers which are outside of their charters or articles of association, has been frequent, and is most beneficial, and is undisputed. These are real contests, however, between the stockholder and the corporation of which he is a member.

The case before us goes beyond this.

This corporation, like others, is created a body politic and corporate, that it may in its corporate name transact all the

business which its charter or other organic act authorizes it to do.

Such corporations may be common carriers, bankers, insurers, merchants, and may make contracts, commit torts, and incur liabilities, and may sue or be sued in their corporate name in regard to all of these transactions. The parties who deal with them understand this, and that they are dealing with a body which has these rights and is subject to these obligations, and they do not deal with or count upon a liability to the stockholder whom they do not know and with whom they have no privity of contract or other relation.

The principle involved in the case of *Dodge* v. *Woolsey* permits the stockholder in one of these corporations to step in between that corporation and the party with whom it has been dealing and institute and control a suit in which the rights involved are those of the corporation, and the controversy is one really between that corporation and the other party, each being entirely capable of asserting its own rights.

This is a very different affair from a controversy between the shareholder of a corporation and that corporation itself, or its managing directors or trustees, or the other shareholders, who may be violating his rights or destroying the property in which he has an interest. Into such a contest the outsider, dealing with the corporation through its managing agents in a matter within their authority, cannot be dragged, except where it is necessary to prevent an absolute failure of justice in cases which have been recognized as exceptional in their character and calling for the extraordinary powers of a court of equity. It is, therefore, always a question of equitable jurisprudence, and as such has, within the last forty years, received the repeated consideration of the highest courts of England and of this country.

The earliest English case in which this subject received any very careful consideration is *Foss* v. *Harbottle* (2 Hare, 461), where Vice-Chancellor Wigram gave a very full and able opinion. The case was decided in 1843 on a demurrer to the bill, which was brought by Foss and Turton, two shareholders in an incorporation called the Victoria Park Company, on behalf of themselves and all other stockholders, except those who

were made defendants, against the directors and one share-holder not a director, and against the solicitor and architect of the company. The bill charged that the defendants concerted and effected various fraudulent and illegal transactions, whereby the property of the company was misapplied, aliened, and wasted; that there had ceased to be a sufficient number of qualified directors to constitute a board; and that the company had no clerk or office. It prayed for the appointment of a receiver and for a decree against the defendants to make good the loss. After showing that the case was one in which the right of action was in the company, the Vice-Chancellor says: "In law the corporation and the aggregate members of the corporation are not the same thing for purposes like this; and the only question can be, whether the facts alleged in this case justify a departure from the rule which *prima facie* would require that the corporation should sue in its own name and in its corporate character, or in the name of some one whom the law has appointed to be its representative." Again, after pointing out that cases may arise where the claims of justice would be found superior to the technical rules respecting the mode in which corporations are required to sue, he adds:—

"But, on the other hand, it must not be without reasons of a very urgent character that the established rules of law and practice are to be departed from, — rules which, though in a sense technical, are founded on the general principles of justice and convenience; and the question is, whether a case is stated in this bill entitling the plaintiffs to sue in their private characters." He then, in an elaborate argument, holds that the bill is fatally defective because it does not aver that there is no acting or *de facto* board of directors who might have ordered the bringing of this suit; and, secondly, that it was the duty of the plaintiffs — the two shareholders who complain of what had been done — to have called a meeting of the shareholders or attended at some regular annual meeting, and obtained the action of a majority on the matters in issue. The majority, he says, may have been content with what was done, and may have ratified the action of the board, in which case the whole body would have been bound by it.

The demurrer was sustained and the bill dismissed.

In the subsequent case of *Mozley* v. *Alston* (1 Ph. 790), decided in 1847, Lord Chancellor Lyndhurst says that "the observations of the Vice-Chancellor in *Foss* v. *Harbottle* correctly represent what is the principle and practice of the court in reference to suits of this description."

These cases have been referred to again and again in the English courts as leading cases on the subject to which they relate, and always with approval.

In *Gray* v. *Lewis*, decided in 1873, Sir W. M. James, L. J., said: "I am of opinion that the only person, if you may call it a person, having a right to complain was the incorporated society called *Charles Lafitte & Co.* In its corporate character it was liable to be sued and was entitled to sue; and if the company sued in its corporate character, the defendant might allege a release or a compromise by the company in its corporate character, — a defence which would not be open in a suit where a plaintiff is suing on behalf of himself and other shareholders. I think it is of the utmost importance to maintain the rule laid down in *Mozley* v. *Alston* and *Foss* v. *Harbottle*, to which, as I understand, the only exception is where the corporate body has got into the hands of directors, and of the majority, which directors and majority are using their power for the purpose of doing something fraudulent against the minority, who are overpowered by them, as in *Atwood* v. *Merryweather*, where Vice-Chancellor Wood sustained a bill by a shareholder on behalf of himself and others, and there it was after an attempt had been made to obtain proper authority from the corporate body itself in a public meeting assembled." Law Rep. 8 Ch. App. 1035.

But perhaps the best assertion of the rule and of the exceptions to it are found in the opinion of the court by the same learned justice in *MacDougall* v. *Gardiner*, in 1875, 1 Ch. D. 13. "I am of opinion," he says, "that this demurrer ought to be allowed. I think it is of the utmost importance in all these controversies that the rule which is well known in this court as the rule in *Mozley* v. *Alston*, and *Lord* v. *Copper Miners' Company*, and *Foss* v. *Harbottle*, should always be adhered to; that is to say, that nothing connected with internal disputes between

shareholders is to be made the subject of a bill by some one shareholder on behalf of himself and others, unless there be something illegal, oppressive, or fraudulent; unless there is something *ultra vires* on the part of the company *quâ* company, or on the part of the majority of the company, so that they are not fit persons to determine it, but that every litigation must be in the name of the company, if the company really desire it. Because there may be a great many wrongs committed in a company, — there may be claims against directors, there may be claims against officers, there may be claims against debtors; there may be a variety of things which a company may well be entitled to complain of, but which, as a matter of good sense, they do not think it right to make the subject of litigation; and it is the company, as a company, which has to determine whether it will make anything that is a wrong to the company a subject-matter of litigation, or whether it will take steps to prevent the wrong from being done."

The cases in the English courts are numerous, but the foregoing citations give the spirit of them correctly.

In this country the cases outside of the Federal courts are not numerous, and while they admit the right of a stockholder to sue in cases where the corporation is the proper party to bring the suit, they limit this right to cases where the directors are guilty of a fraud or a breach of trust, or are proceeding *ultra vires*. *Marsh* v. *Eastern Railroad Co.*, 40 N. H. 548; *Peabody* v. *Flint*, 6 Allen (Mass.), 52. In *Brewer* v. *Boston Theatre* (104 Mass. 378), the general doctrine and its limitations are very well stated. See also *Hersey* v. *Veazie*, 24 Me. 9; and *Samuel* v. *Holladay*, 1 Woolw. 400.

The case of *Dodge* v. *Woolsey*, decided in this court in 1855, is, however, the leading case on the subject in this country.

And we do not believe, notwithstanding some expressions in the opinion, that it is justly chargeable with the abuses we have mentioned. It was manifestly well considered, and the opinion is unusually long, discussing the point now under consideration with a full reference to the decisions then made in the courts of England. The suit — a bill in chancery — was brought in the Circuit Court for the District of Ohio, by Woolsey, a stockholder of the Commercial Bank of Cleveland, and a citizen

of Connecticut, against that bank, its managing directors, and Dodge, tax-collector of the county in which the bank was situated, citizens of Ohio. The bill alleged that Dodge had levied upon property of the bank to make collection of a tax, which, by the Constitution of the State of Ohio, the bank was bound to pay; that in that respect the Constitution, then recently adopted, impaired the obligation of the contract of the State with the bank, contained in its charter. It appeared in the case that Woolsey had, by letter directed to the board of directors, requested them to institute proceedings to prevent the collection of this tax; but the board, by a resolution, declined to take any such action, while expressing their opinion that the tax was illegal. In the opinion of the court, reciting the circumstances which justified its interposition at the suit of the stockholder, the allegation of the bill is adverted to, that if the taxes are enforced it will annul the contract with the State concerning taxation, and that the *tax is so onerous upon the bank that it will compel a suspension and final cessation of its business.* The following extract from Angell & Ames on Corporations is cited with approval: " Though the result of the authorities clearly is that in a corporation, when acting within the scope of, and in obedience to, the provisions of its constitution, the will of the majority, clearly expressed, must govern, yet beyond the limits of the act of incorporation the will of the majority cannot make the act valid, and the power of a court of equity may be put in motion at the instance of a single shareholder, if he can show that the corporation are employing their statutory powers for the accomplishment of purposes not within the scope of their institution. Yet it is to be observed that there is an important distinction between this class of cases and those in which there is no breach of trust, but only error and misapprehension or simple negligence on the part of the directors." And the court adds: " It is obvious from this rule that the circumstances of each case must determine the jurisdiction of a court of equity to give the relief sought."

A very large part of the opinion is devoted to the consideration of the high function of this court in construing the Constitution of the United States, and it is impossible not to see the influence on the mind of the writer of that opinion of the

fact that the only question on the merits of the case was one which peculiarly belonged to the Federal judiciary, and especially to this court to decide; namely, whether the Constitution of the State of Ohio violated the obligation of the contract concerning taxation found in the charter of the bank.

As the law then stood there was no means by which the bank, being a citizen of the same State with Dodge, the tax-collector, could bring into a court of the United States the right which it asserted under the Constitution, to be relieved of the tax in question, except by writ of error to a State court from the Supreme Court of the United States.

That difficulty no longer exists, for by the act of March 3, 1875, c. 137 (18 Stat., pt. 3, p. 470), all suits arising under the Constitution or laws of the United States may be brought originally in the Circuit Courts of the United States without regard to the citizenship of the parties. Under this statute, if it had then existed, the bank, in *Dodge* v. *Woolsey*, could undoubtedly have brought suit to restrain the collection of the tax in its own name, without resort to one of its shareholders for that purpose.

And this same statute, while enlarging the jurisdiction of the Circuit Courts in cases fairly within the constitutional grant of power to the Federal judiciary, strikes a blow, by its fifth section, at improper and collusive attempts to impose upon those courts the cognizance of cases not justly belonging to them. It declares, if at any time in the progress of a case, either originally commenced in a Circuit Court, or removed there from a State court, it shall appear to said court "that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said Circuit Court shall proceed no further, but shall dismiss the suit or remand it to the court from which it was removed."

It is believed that a rigid enforcement of this statute by the Circuit Courts would relieve them of many cases which have no proper place on their dockets.

This examination of *Dodge* v. *Woolsey* satisfies us that it does not establish, nor was it intended to establish, a doctrine on this subject different in any material respect from that found in the cases in the English and in other American courts, and that the recent legislation of Congress referred to leaves no reason for any expansion of the rule in that case beyond its fair interpretation.

We understand that doctrine to be that to enable a stockholder in a corporation to sustain in a court of equity in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit—

Some action or threatened action of the managing board of directors or trustees of the corporation which is beyond the authority conferred on them by their charter or other source of organization;

Or such a fraudulent transaction completed or contemplated by the acting managers, in connection with some other party, or among themselves, or with other shareholders as will result in serious injury to the corporation, or to the interests of the other shareholders;

Or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders;

Or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a court of equity.

Possibly other cases may arise in which, to prevent irremediable injury, or a total failure of justice, the court would be justified in exercising its powers, but the foregoing may be regarded as an outline of the principles which govern this class of cases.

But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all

the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits or has permitted, he must show, if · he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.

The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders when that is necessary, and the cause of failure in these efforts should be stated with particularity, and an allegation that complainant was a shareholder at the time of the transactions of which he complains, or that his shares have devolved on him since by operation of law, and that the suit is not a collusive one to confer on a court of the United States jurisdiction in a case of which it could otherwise have no cognizance, should be in the bill, which should be verified by affidavit.

It is needless to say that appellant's bill presents no such case as we have here supposed to be necessary to the jurisdiction of the court.

He merely avers that he requested the president and directors to desist from furnishing water free of expense to the city, except in case of fire or other great necessity, and that they declined to do as he requested. No correspondence on the subject is given. No reason for declining. We have here no allegation of a meeting of the directors, in which the matter was formally laid before them for action. No attempt to consult the other shareholders to ascertain their opinions, or obtain their action. But within five days after his application to the directors this bill is filed. There is no allegation of fraud or of acts *ultra vires*, or of destruction of property, or of irremediable injury of any kind.

Conceding appellant's construction of the company's charter to be correct, there is nothing which *forbids* the corporation from dealing with the city in the manner it has done. That

city conferred on the company valuable rights by special ordinance; namely, the use of the streets for laying its pipes, and the privilege of furnishing water to the whole population. It may be the exercise of the highest wisdom to let the city use the water in the manner complained of. The directors are better able to act understandingly on this subject than a stockholder residing in New York. The great body of the stockholders residing in Oakland or other places in California may take this view of it, and be content to abide by the action of their directors.

If this be so, is a bitter litigation with the city to be conducted by one stockholder for the corporation and all other stockholders, because the amount of his dividends is diminished?

This question answers itself, and without considering the other point raised by the demurrer, we are of opinion that it was properly sustained, and the bill dismissed, because the appellant shows no standing in a court of equity — no right in himself to prosecute this suit.

*Decree affirmed.*