Doyle RENFRO, et al,
Plaintiffs-Appellants,

v.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, in its corporate capacity,
Intervenor-Plaintiff-Appellee,

v.

Kenneth JUMPER, et al.,
Defendants-Appellees.

No. 85–1122
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 15, 1985.

Templeton & Garner, Robert E. Garner, Nancy J. Stone, Amarillo, Tex., for plaintiffs-appellants.

Brooks L. Harman, Odessa, Tex., for Estate of W.B. Sears.

William F. Baker, John David Hart, Abilene, Tex., for Perry Davis, Jr., et al.

Stewart McKeehan, Odessa, Tex., for Glyn L. Day, Jr. & Leroy Spinks.

T. Richard Handler, T. Ray Guy, Robert W. Kantner, Dallas, Tex., for FDIC.

Randal Patterson, Odessa, Tex., for Tomlinson & Shackelford.

Barham Bratton, Austin, Tex., for Bob Switzer.

Gloria T. Svanan, Odessa, Tex., for A.B. Finch, M.D.

Before GEE, RANDALL, and DAVIS, Circuit Judges.

PER CURIAM.

In this case, numerous shareholders of a failed national bank appeal the dismissal of their derivative action for negligence and breach of duty filed against former officers and directors of the bank, and we affirm.

In September 1983, the Comptroller of the Currency declared the National Bank of Odessa insolvent and appointed the FDIC as its receiver. In late April of the following year, over 50 of its shareholders notified the FDIC that they intended to sue the former officials of the bank and called on it "[i]n the event that the FDIC owns the causes of action" to bring suit upon them. According to the allegations of the complaint which they filed two months later, they received no response to their demand.[1] Acting in its capacity as receiver, the FDIC removed the case to federal court, moved to intervene in its corporate capacity, and in addition sought dismissal of the shareholders' action. Those motions were granted, and the FDIC filed its own action. This appeal from the order of dismissal followed.

Appellants do not dispute that the causes of action that they seek to bring are derivative ones, or that the FDIC owns them. Their sole contention is that the asserted failure of the FDIC to reply to their demand letter justified their action in bringing suit. We do not agree.

A derivative action by shareholders to enforce corporate rights is a remedy of last resort. Over one hundred years ago, the Supreme Court observed:

[B]efore the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhaust-

---

1. An affidavit attached to the motion to dismiss filed by the FDIC, executed by counsel representing it, asserts that she conferred with the shareholders' counsel by telephone in response to the April letter, advising her that the claims in question belonged to the FDIC and would be proceeded upon when its investigation was completed. Shareholders' counsel recalls no such conversation. Given our disposition of the appeal, this controversy need not be resolved.

ed all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity with his wishes.

*Hawes v. Contra Costa Water Co.*, 104 U.S. 450, 460–61, 14 Otto 450, 460–61, 26 L.Ed. 827 (1882).

The Court's observation has stood the test of time:

> Since the corporation alone has standing to sue both insiders and outsiders for actionable wrongs committed against it, courts have been careful to regard the derivative suit, as an extraordinary remedy, available to the shareholder, as the corporation's representative, only when there is "no other road to redress."

Note, "Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit," 73 Harv.L.Rev. 746, 748 (1960).

Rule 23.1, Federal Rules of Civil Procedure, requires that such a complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority ... and the reasons for his failure to obtain the action or for not making the effort." In this instance, plaintiffs allege merely that they made two demands on the FDIC in April and, when the FDIC failed to respond to their demands and without further contact, filed suit in June. In light of the requirements of Rule 23.1, we are justified in assuming that plaintiffs did no more in this respect than they allege they did. They make no claim that the FDIC refused to proceed or was not acting in good faith, merely one that it did not respond to plaintiffs' demand. By the time plaintiffs' suit was dismissed, the FDIC had brought its own against the same former bank officials that plaintiffs sought to sue on behalf of the corporation.

To establish his right to bring a derivative action, a shareholder must "show, to the satisfaction of the court, that he has exhausted all the means within his reach to obtain" the action he desires. *Hawes v. Contra Costa Water Co.*, 104 U.S. 450, 460–61, 14 Otto 450, 460–61, 26 L.Ed. 827 (1882); *see Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir.1980) (Rule 23.1 "is essentially a requirement that a stockholder exhaust his intracorporate remedies before bringing a derivative action"). The demand required by Rule 23.1 "must be more than pro forma; the plaintiff must make a serious request ... and specify the nature of the activity in question." *Smachlo v. Birkelo*, 576 F.Supp. 1439, 1443 (D.Del. 1983). Stated otherwise, the shareholder "must make an earnest, not a simulated effort ... to induce remedial action." *Hawes*, 104 U.S. at 461, 14 Otto at 450. This requirement is consistent with the general principle that "the responsibility for determining whether or not a corporation shall enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management." *Landy v. FDIC*, 486 F.2d 139, 146 (3d Cir.1973).

Courts have required more than a simple demand that the corporation file suit; they have also required plaintiffs to make reasonable efforts to assist the corporation in initiating action. Thus, in *Shlensky v. Dorsey*, 574 F.2d 131 (3d Cir.1978), the court refused to allow a derivative action where the plaintiffs requested action against unidentified third parties. The court found this demand "completely lacking in the specificity which would give the directors a fair opportunity to initiate the action." *Id.* at 141. Similarly, the First Circuit has stated that the directors must be "given full knowledge of the basis for the claim." *Halprin v. Babbitt*, 303 F.2d 138, 141 (1st Cir.1962).

In light of these authorities, we conclude that appellants' efforts were inadequate as a matter of law. They did not inform the FDIC of "the basis for the claim(s)" they wanted it to assert. See *Halprin*, 303 F.2d at 141. Although they informed the FDIC of the identity of the prospective defendants by enclosing a copy of the complaint they had drafted, they included no information about the allegedly wrongful actions of the Bank's officials. Appellants' complaint contains only conclusory charges without factual allegations.

Furthermore, appellants' letter demand states merely that they *might* be willing to share their information with the FDIC, and then only if it filed suit promptly. This can hardly be called an earnest effort to induce action by the FDIC.

Appellants' reliance upon the FDIC's alleged failure to respond is unjustified. Assuming *arguendo* that the FDIC in fact failed to respond, its failure was not surprising in light of the language of appellants' letter, which does not appear to call for a response. Although appellants demanded that the FDIC bring suit, they never stated that they would forego their own suit if it did so; and they evinced an intention to file suit regardless of the FDIC's actions. The only response that the letter requested was "a copy of the contract of sale or any other documents which you claim gives rise to the FDIC's ownership of the causes of action that we are asserting." Although they admit that they were aware of the FDIC's investigation, they took no steps to assist the investigation or to determine its status before filing. In short, appellants' efforts to induce action by the FDIC can only be characterized as pro forma and therefore were inadequate as a matter of law. Surveying them, we find it hard to avoid the conclusion that from the outset plaintiffs were resolved upon making a trip to the briar patch and sought only an excuse to be thrown in.

Moreover, the record reveals that at present the actions which plaintiffs wished to bring derivatively are being pursued directly by the FDIC, the proper party to assert them, against the same officials whom plaintiffs sued. Nor do plaintiffs assert that the actions are not proceeding properly or that any conflict of interest is present. In such circumstances, even had plaintiffs' bringing suit been justified, we would see little, if any, occasion for a reversal of the trial court's order. See *Landy, supra*, 486 F.2d at 151–52.

The order of the district court dismissing plaintiffs' action is therefore

AFFIRMED.