[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO REARGUE MOTION TO DISMISS (DOCKET ENTRY NO. 102)
The plaintiffs, Anthony Musto, M.D., Wayne Larrison, M.D., Perry Seamonds, M.D., Jeffrey Kaplan, M.D., Brian DeBroff, M.D., Philip Falcone, M.D. and Jeffrey Sandler, M.D., have filed a twelve-count complaint against the defendants, OptiCare Eye Health Centers, Inc., OptiCare, P.C. and Dean Yimoyines, M.D. The plaintiffs are employees of OptiCare, P.C. (OPC) and stockholders of OptiCare Eye Health Centers, Inc. (OHCI). OPC and OHCI provide general eye care, optical services, outpatient ophthalmic surgery, consultative services for complicated eye diseases and a managed care network throughout Connecticut. ORCI owns and operates retail eyeglass and eyeglass manufacturing businesses. OPC was established for rendering ophthalmology and optometry services exclusively for ORCI. Yimoyines is president, chief executive officer and a stockholder of ORCI, and president as well as the sole stockholder and director of OPC. The plaintiffs CT Page 7069 allege in the first six counts that the defendants enticed them to become stockholders of OHCI and employees of OPC based upon misrepresentations. The plaintiffs also allege that the defendants breached the employment agreements, breached the implied covenant of good faith and fair dealing and violated the Connecticut Unfair Trade Practices Act. Counts seven through twelve are shareholder derivative causes of action brought by Wayne Larrison, M.D. on behalf of all similarly situated stockholders. The plaintiffs allege that Yimoyines breached his fiduciary obligations of good faith, fairness and loyalty owed to Larrison and the represented stockholders (count seven); Yimoyines breached the terms of a stockholders agreement (count eight); Yimoyines breached the implied covenant of good faith and fair dealing (count nine); Yimoyines misappropriated and wasted stockholder monies (count ten); Yimoyines has interfered with the business relationships between ORCI and the stockholders with third parties (count eleven); and Yimoyines and OPC's actions have violated the Connecticut Unfair Trade Practices Act (count twelve).
The defendants filed a motion to dismiss counts seven through twelve on the ground that the plaintiffs lack standing due to Larrison's failure to make demand on the defendants and Larrison's unsuitablilty as a representative of the corporation's other shareholders, and to dismiss the entire complaint on the Ground of insufficiency of process.[1] On March 15, 1999, the court, Melville, J., granted the defendants' motion to dismiss without prejudice to the plaintiffs to reargue within three I weeks. The instant motion results and the plaintiffs have filed an objection to the motion. The court heard argument thereon on April 5, 1999.
A motion to dismiss properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998). Because a party must have standing to invoke the subject matter jurisdiction of the court, it is appropriate for a court to evaluate whether a party has made a colorable claim of injury when a motion to dismiss pursuant to CT Page 7070 Practice Book § 10-31, formerly § 143, is made. Gill v.Diorio, 51 Conn. App. 140, 144, 720 A.2d 526 (1998).
The defendants argue that the plaintiffs have failed to give sufficient notice of their shareholder derivative claims pursuant to General Statutes § 33-722. The defendants contend that they have not been allowed enough time to investigate the claims made by the derivative plaintiffs. The defendants also contend that the plaintiffs have not made written demand upon the ORCI board of directors, thus informing it of the claims made, the factual basis for the claims and the harm caused to the corporation.
The plaintiffs argue that they tendered sufficient demand to Yimoyines pursuant to § 33-722 on July 20, 1998, and followed up with the demand by contacting and meeting with members of the board of directors. The plaintiffs contend that the demand adequately notified the defendants of what the plaintiffs claimed were problems within the corporation.[2]
"A shareholder may not commence or maintain a derivative proceeding unless the shareholder: (1) Was a shareholder of the corporation at the time of the act or omission complained of or became a shareholder through transfer by operation of law from one who was a shareholder at that time; and (2) fairly and adequately represents the interests of the corporation in enforcing the right of the corporation." General Statutes §33-721.
 "[I]t is axiomatic that a claim of injury, the basis of which is a wrong to the corporation, must be brought in a derivative suit, with the plaintiff proceeding secondarily," deriving his rights from the corporation which is alleged to have been wronged. Derivative actions are governed by § 52-572j.[3] Under § 52-572j, a shareholder who believes that the corporation has been harmed by the actions of corporate officers, directors, or third parties may bring suit on behalf of the corporation, should the corporation fail to do so itself." (Citation omitted.) Fink v. Golenbock, 238 Conn. 183, 200-01, 680 A.2d 1243 (1996).
"No shareholder may commence a derivative proceeding until: (1) A written demand has been made upon the corporation to take suitable action; and (2) ninety days have expired from the date the demand was made unless the shareholder CT Page 7071 has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the ninety-day period." General Statutes § 33-722. There are no cases interpreting § 33-722, which became effective on January 1, 1997, and the legislative history surrounding § 33-722
provides no assistance on this matter.[4]
The requirement of demand upon directors is a matter of standing, and a condition precedent to the action. 19 Am.Jur.2d, Corporations § 2275.[5] The right of a stockholder to bring a derivative action does not come into being until he has made a demand on the corporation to institute such an action, that such demand has been refused, or until the plaintiff stockholder has demonstrated that such a demand would have been futile. Stepak v. Dean, 434 A.2d 388, 390 (Del.Ch. 1981). In effect, it is analogous to the exhaustion of administrative remedies requirement in administrative law cases in that it requires the plaintiff to pursue all available avenues of extrajudicial remedies before filing suit. Smachlo v. Birkelo,576 F. Sup. 1439, 1443 (D.Del. 1983). A derivative action by shareholders to enforce corporate rights is a remedy of last resort. Renfro v. Deposit Ins. Corp. , 773 F.2d 657, 658 (5th Cir. 1985).[6] See also Weiss v. Temporary Investment Fund,516 F. Sup. 665 (D.Del. 1981), aff'd, 692 F.2d 928 (3rd Cir. 1982) (dismissal of derivative suit for failure to make adequate demand on board of directors). Therefore, if the plaintiffs failed to make adequate demand upon the defendants, the court lacks subject matter jurisdiction over the plaintiffs' derivative claims.
Demand on the directors is intended to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs. Kaster v. Modification Systems,Inc., 731 F.2d 1014 (2nd Cir. 1984).
 "Adequacy of demand is tied to its purpose. Demand is required in order to assure compliance with the most fundamental principle of corporate governance directors are answerable to the shareholders and are charged with the duty and responsibility to manage all aspects of corporate affairs. If misconduct has occurred, the directors must be given the initial opportunity to redress the wrong prior to resort to litigation unless demand is excused for reasons CT Page 7072 such as self-dealing, self-interest, bad purpose, corrupt motive and the like. . . . Upon receipt of a demand, the Board of Directors must investigate and evaluate the charges in order to discharge its duty to the shareholders and manage corporate affairs responsibly. . . . The purpose of demand is to alert the Board of Directors so that it can take such corrective action, if any, as it feels is merited. . . . A demand is adequate if it satisfies that purpose." Allison on Behalf of G.M.C. v. General Motors Corp. , 604 F. Sup. 1106, 1117 (D.Del.), aff'd, 782 F.2d 1026 (3rd Cir. 1985).
A demand does not have to be in any particular form or recite any particular language. Syracuse Television. Inc. v. Channel 9,Syracuse. Inc., 273 N.Y.S.2d 16, 24-25, 51 Misc. 188 (1966). However, the demand itself must be more than pro forma; the plaintiff must make a serious request upon the board and specify the nature of the activity in question. Smachlo v. Birkelo, supra, 576 F. Sup. 1443. At a minimum, a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the corporation, and request remedial relief. In most instances, the shareholder need not specify his legal theory, every fact in support of that theory, or the precise quantum of damages. Allison on Behalf of G.M.C. v.General Motors Corp. , supra, 604 F. Sup. 1117; see also Lewis v.Sporck 646 F. Sup. 574, 578 (N.D.Cal. 1986) (relying on "sufficiency analysis" in applying Federal Rule of Civil Procedure 23.1[7]). Courts have required more than a simple demand that the corporation file suit; they have also required plaintiffs to make reasonable efforts to assist the corporation in initiating action. Renfro v. Federal Deposit Ins. Corp. , supra, 773 F.2d 659. The shareholder must state facts, not mere general charges or conclusions. 19 Am.Jur.2d, Corporations § 2278. Mere general charges and blanket or conclusory averments without a statement of, or reference to, facts on which a suit could be maintained are not sufficient. 18 C.J.S., Corporations § 408.
The plaintiffs sent to Yimoyines a three-page letter on July 20, 1998, which the plaintiffs argue satisfies the demand requirement. (Motion In Opposition To Motion To Dismiss, Exhibit F). The opening paragraph of the letter advises Yimoyines that [t]o much time is passing without your addressing the issues we feel are important for OptiCare and for us. . . . [Y]ou and we must find the time on a regular basis, weekly if necessary, to resolve (not just discuss) problems which we all acknowledge as CT Page 7073 detrimental to OptiCare." (Exhibit F). The plaintiffs then set out an agenda and indicate that they are ready, willing and able to meet with Yimoyines. (Exhibit F). Following this, the plaintiffs list twenty areas of concern, covering such topics as shifting of compensation pool percentages, streamlining billing, collection and accounting procedures, the formation of new committees to review management decisions and expansion of the board of directors. (Exhibit F).
This court concludes that the July 20, 1998 letter does not constitute an adequate demand. The letter was not addressed to the board of directors of ORCI, but only Yimoyines in his position as president of ORCI. A demand on the president of the corporation is not sufficient. Kaster v. Modification Systems,Inc., sapra, 731 F.2d 1017. The plaintiffs raised many issues but did not offer specific ideas or recommendations upon which action could be taken by the defendants. For example, paragraph seven merely states: ""Billing and collection procedures are inefficient and need to be reworked." (Exhibit F). No examples of inefficiency are given, and no alternatives are submitted for consideration. Thus, the directors were not provided with full knowledge of the basis for the plaintiffs' claims, nor does the letter inform the defendants of their wrongful acts which need to be remedied. Renfro v. Federal Deposit Ins. Corp. , supra, 773 F.2d 659. The July 20, 1998 letter is merely a list of suggested changes to corporate structure and management, without accompanying supporting data.[8] Furthermore, the July 20, 1998 letter is devoid of claims of wrongdoing by specific people or any demand upon the board of directors to remedy the situation immediately.[9] It is for these reasons that the July 20, 1998 letter does not constitute the making of an adequate demand upon the board of directors of ORCI. Therefore, the plaintiffs do not have standing to bring the derivative counts of the complaint and accordingly the defendants' motion to dismiss counts seven through twelve of the complaint should be and is hereby granted
on the ground that the court lacks subject mater jurisdiction over the derivative claims.[10]
Melville, J.