**EQUITEC–COLE ROESLER LLC, Derivatively on Behalf of CenterPoint Energy, Inc., formerly known as Reliant Energy, Inc., Plaintiff,**

v.

**David M. McCLANAHAN, Milton Carroll, John T. Cater, O. Holcombe Crosswell, Robert J. Cruikshank, and T. Milton Honea, Defendants,**

and

**CENTER POINT ENERGY, INC., formerly known as Reliant Energy, Inc., a Texas Corporation, Nominal Defendant.**

No. CIV.A. H–02–4048.

United States District Court, S.D. Texas, Houston Division.

March 13, 2003.

Paul Thomas Warner, Reich & Binstock, Houston, Joe Kendall, Provost Umphrey LLP, Dallas, Brian J Robbins, Robbins Umeda & Fink, LLP, San Diego, CA, for Equitec–Cole Roesler LLC, Derivatively on Behalf of Centerpoint Energy Inc, fka, Reliant Energy Inc, plaintiffs.

James Edward Maloney, Baker & Botts, Houston, for David M McClanahan, Milton Carroll, John T Cater, O Holcombe Crosswell, Robert J Cruikshank, T Milton Honea, CenterPoint Energy Inc, fka, Reliant Energy Inc, a Texas Corp, defendants.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiff, Equitec–Cole Roesler LLC, derivatively and on behalf of CenterPoint Energy, Inc. (CenterPoint), brings this shareholder derivative action pursuant to Article 5.14 of the Texas Business Corporations Act against defendants David M. McClanahan, Milton Carroll, John T. Cater, O. Holcombe Crosswell, Robert J. Cruikshank, and T. Milton Honea, and nominal defendant CenterPoint Energy, Inc. (CenterPoint), for mismanagement, breach of fiduciary duty, waste of corporate assets, abuse of control, and gross mismanagement. Pending before the court is Defendants' Motion to Dismiss for Failure to Make a Pre–Suit Demand pursuant to Federal Rules of Civil Procedure 12(b)(6) and 23.1 (Docket Entry No. 14). For the reasons set forth below, defendants' motion will be granted.

### I. Factual Background

On October 25, 2002, plaintiff filed a fifty-page Verified Shareholder Derivative Complaint (Docket Entry No. 1) alleging that defendants, who are officers and directors of CenterPoint, mismanaged CenterPoint for their own benefit. Paragraph 74 of plaintiff's Complaint contains the following statement: "While plaintiff has

made a demand on the present Board of Directors of CenterPoint to institute this action as required by Tex. Bus. Corp. Act Art. 5.1(C)(2), plaintiff maintains that this demand constitutes a futile and useless act ..."[1] Paragraph 75 of plaintiff's Complaint contains the following statement:

> Despite having made a demand, plaintiff is immediately filing this action because irreparable injury to CenterPoint will result if plaintiff is forced to wait for the expiration of the 90–day period set forth in Tex. Bus. Corp. Act Art. 5.1(C)(2) before filing this action and seeking injunctive relief ...[2]

On December 23, 2002, defendants filed their Motion to Dismiss for Failure to Make a Pre–Suit Demand (Docket Entry No. 14). On January 10, 2003, plaintiff filed its Response to Defendants' Motion to Dismiss (Docket Entry No. 15), and on January 23, 2003, defendants filed their Reply Brief in Further Support of Their Motion to Dismiss (Docket Entry No. 16).

## II. *Standard of Review*

Defendants' motion to dismiss challenges the plaintiff's Complaint for failure to state a legally cognizable claim because of plaintiff's failure to satisfy the pleading requirements for a shareholder's derivative suit. A motion to dismiss should not be granted unless, based solely on the pleadings, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In reviewing a motion to dismiss the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996). Generally, the court may not look beyond the plaintiff's pleadings in ruling on a motion to dismiss. *See Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied,* 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000). But conclusory allegations or legal conclusions masquerading as factual allegations will not suffice to prevent a motion to dismiss. *Jefferson v. Lead Industries Association, Inc.,* 106 F.3d 1245, 1250 (5th Cir.1997).

## III. *Defendants' Motion to Dismiss*

Defendants move the court to dismiss this action because plaintiff failed to file a pre-suit demand in compliance with Article 5.14 of the Texas Business Corporation Act and Federal Rule of Civil Procedure 23.1.[3] Plaintiff urges the court to deny defendants' motion because "[o]n October 11, 2002, counsel for Plaintiff served by facsimile a detailed demand letter pursuant to Texas Business Corporation Act Article 5.1 on Milton Carroll, the Chairman of the Board of Directors of Center-Point."[4]

### A. Arguments Presented by the Parties

Defendants argue that "[p]laintiff has not made demand on CenterPoint[ ... and that b]ecause a demand is a necessary prerequisite for maintaining a derivative suit, [p]laintiff's claims should be dismissed with prejudice."[5] Defendants note, however:

> In their verified Complaint, Plaintiffs allege that they have made a demand on CenterPoint. (Complaint ¶¶ 74–75) Plaintiff's allegation that it has made a

---

**1.** Verified Shareholder Derivative Complaint, Docket Entry No. 1, p. 42, ¶ 74.

**2.** *Id.* at p. 45, ¶ 75.

**3.** Defendants' Motion to Dismiss, Docket Entry No. 14, p. 2.

**4.** Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, p. 3.

**5.** Defendants' Motion to Dismiss, Docket Entry No. 14, p. 2.

demand is patently false; CenterPoint has received no such demand.[6]

Plaintiff does not dispute that the Texas Business Corporation Act requires a pre-suit demand.[7] Instead, plaintiff argues that it sent a "pre-suit demand letter via facsimile to Milton Carroll, Chairman of the Board of CenterPoint, on October 11, 2002, and has a fax confirmation sheet confirming its receipt."[8] Plaintiff argues that

[t]here is absolutely no prohibition against sending the demand letter to the corporation via facsimile. Facsimile is the fastest method of transmission, and a fax confirmation sheet establishes proof of service. Defendants should not be rewarded for their refusal to acknowledge receiving the demand letter . . .[9]

In support of its argument, plaintiff submits the affidavits of Pamela Reeves,[10] Brittney Thompson,[11] and Debbie Branscum.[12]

Reeves states in her affidavit that on October 11, 2002, she witnessed Joe Kendall review and sign the demand letter, that she checked CenterPoint's web site for its corporate fax number, that when she did not find a fax number listed on CenterPoint's web site, she called the phone number listed there and asked to speak with Milton Carroll and his secretary, that when she was informed that both Milton Carroll and his secretary were unavailable, she asked for Milton Carroll's fax number, that the receptionist to whom she was speaking did not know the fax number, and that when the receptionist transferred her call to another woman who did not know Milton Carroll's fax number the second woman said that she was down the hall from Milton Carroll's office and that if the letter was faxed to her department she would take it to Milton Carroll's office.[13] Reeves also states that she "then faxed the demand letter at approximately 4:00 pm on October 11, 2002, and waited for and received confirmation that the fax had been successfully transmitted."[14]

Thompson states in her affidavit that on December 30, 2002, she called CenterPoint to determine the main fax number or the fax number for Milton Carroll, that she reached Milton Carroll's office and spoke with his secretary who gave her a fax number, and that "although it was in the same numerical sequence, that number was slightly different than the number previously given to us that our file indicated the demand letter had originally been sent."[15]

**6.** *Id.* at p. 2, n. 1.

**7.** Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, p. 3.

**8.** *Id.* at pp. 3–4. See also Demand letter and fax confirmation sheet, Exhibit A attached thereto.

**9.** *Id.* at p. 5.

**10.** Exhibit B attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15.

**11.** Exhibit C attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15.

**12.** Exhibit D attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15.

**13.** Exhibit B attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15.

**14.** *Id.* at ¶ 9.

**15.** Exhibit C attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, ¶ 7.

Branscum states in her affidavit that on December 20, 2002, she looked on Center-Point's web site for a corporate fax number, that when she did not find a corporate fax number listed on the web site she called the phone number listed there and spoke with a receptionist who told her that "CenterPoint has no central corporate fax number, and that each person had his or her own fax number." [16] Branscum also states that she regularly uses web sites to find out information about corporations and has never seen a site that fails to list a fax number for the corporate office.[17]

## B. Governing Law

### 1. *Federal Rule of Civil Procedure 23.1*

■ Rule 23.1 requires a plaintiff in a shareholder derivative suit to file a verified complaint and to

> allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

"[A]lthough Rule 23.1 clearly *contemplates* ... [a] demand requirement ... it does not *create* a demand requirement of any particular dimension." *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (emphasis in original). In *Kamen* the Court stated that "[t]he purpose of requiring a precomplaint demand is to protect the directors' prerogative to take over the litigation or to oppose it." *Id.* at 1719. Recognizing that Rule 23.1 gives little dimension to the demand requirement, the Court directed lower federal courts to look to state law to determine the scope of the demand requirement. *Id.* at 1722–1723.

### 2. *Texas Business Corporation Act*

■ The Texas Business Corporation Act states that no derivative action may be filed until "a written demand is filed with the corporation setting forth with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action." Tex. Bus. Corp. Act Art. 5.14(C)(1) (Vernon Supp.2003). Amendments to the Texas Business Corporation Act enacted in 1997 made the demand requirement in Texas absolute. *Pace v. Jordan*, 999 S.W.2d 615, 621 (Tex.App.—Houston [1st Dist.] 1999, pet. denied). Under Texas law plaintiff must make a demand regardless of whether such a demand would be futile. *Id.*

## C. Sufficiency of Plaintiff's Pre–Suit Demand

It is undisputed that plaintiff prepared a letter that was intended to satisfy the pre-suit demand requirement, that plaintiff addressed the letter to Milton Carroll, the chairman of CenterPoint's board of directors, that plaintiff transmitted that letter to a fax number that plaintiff knew was not Milton Carroll's fax number, and that plaintiff made no attempt to confirm either that its demand letter was received by Milton Carroll or by any of CenterPoint's other directors or corporate officers.

Courts that have analyzed the sufficiency of pre-suit demands have focused on the sufficiency of the plaintiff's efforts to exhaust intracorporate remedies. *See Renfro v. Federal Deposit Ins. Corp.*, 773 F.2d 657 (5th Cir.1985); *Hawes v. City of Oakland*, 104 U.S. 450, 460–61, 26 L.Ed. 827 (1881). They have also looked to the sufficiency of the authority of those to whom the demand is presented and the sufficien-

---

**16.** Exhibit D attached to Plaintiff's Response to Defendants' Motion to Dismiss, Docket Entry No. 15, ¶ 3.

**17.** *Id.* at ¶ 5.

cy of the demand's content. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1209 (9th Cir.1980).

### 1. *Exhaustion of Intracorporate Remedies*

■ To establish its right to bring a derivative action, plaintiff must "show, to the satisfaction of the court, that [it] . . . has exhausted all the means within . . . its reach to obtain" the action it desires. *Hawes v. Oakland*, 104 U.S. 450, 460–61, 26 L.Ed. 827 (1882), *quoted by Renfro*, 773 F.2d at 658–659. *See also Galef v. Alexander*, 615 F.2d 51, 59 (2d Cir.1980)(pre-suit demand requirement "is essentially a requirement that a stockholder exhaust his intracorporate remedies before bringing a derivative action"). The demand requirement "must be more than pro forma; the plaintiff must make a serious request . . ." *Renfro*, 773 F.2d at 659, *citing Smachlo v. Birkelo*, 576 F.Supp. 1439, 1443 (D.Del. 1983). In other words, the plaintiff "must make an earnest, not a simulated effort . . . to induce remedial action." *Id., quoting Hawes*, 104 U.S. at 461. "This requirement is consistent with the general principle that 'the responsibility for determining whether or not a corporation shall enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management.'" *Id., quoting Landy v. FDIC*, 486 F.2d 139, 146 (3d Cir.1973).

In *Renfro* the court explained that

> [s]ince the corporation alone has standing to sue both insiders and outsiders for actionable wrongs committed against it, courts have been careful to regard the derivative suit, as an extraordinary remedy, available to the shareholder, as the corporation's representative, only when there is no other road to redress.

*Renfro*, 773 F.2d at 659 (citation omitted).

■ In this case plaintiff merely alleges that on October 11, 2002, it made one demand on the chairman of CenterPoint's board of directors, and that without further contact, it filed suit on October 25, 2002. Plaintiff does not argue that this single facsimile transmission exhausted all the means within its reach to obtain the action it desires.

Because plaintiff's assertion that it faxed a single demand letter to an unidentified woman who said that she would take the letter to Carroll's office fails to establish that plaintiff exhausted all the means within its reach to obtain, within the corporation itself, the redress of its grievances, the court concludes that plaintiff's demand failed to satisfy Article 5.14(C)(1)'s requirement that it file a pre-suit demand with CenterPoint. *See Renfro*, 773 F.2d at 657.

### 2. *Sufficiency of Carroll's Authority*

■ Article 5.14(C)(1) of the Texas Business Corporation Act identifies the corporation as the entity with which the demand must be filed, and the entity from which action must be sought. Tex. Bus. Corp. Act Art. 5.14(C)(1) (Vernon Supp. 2003). Under Texas law "[a] corporation's directors, not its shareholders, have the right to control litigation of corporate causes of action." *Pace*, 999 S.W.2d at 622, *citing* Tex. Bus. Corp. Act Arts. 2.02(A)(2), 2.31 (Vernon Supp.2003). The *Pace* court stated that "[a] demand is sufficient if the board of directors had a fair opportunity to consider the shareholder's claims." *Pace*, 999 S.W.2d at 621.

#### (a) Authority to Represent the Corporation

Article 2.11(A) of the Texas Business Corporation Act requires that service of a demand on a corporation must be made on certain officers or on the corporation's registered agent: "The president and all vice presidents of the corporation and the reg-

istered agent of the corporation shall be agents of such corporation upon whom any process, notice, or demand required or permitted by law to be served upon the corporation may be served."

■ Paragraph 74 of plaintiff's Complaint states that "[w]hile plaintiff has made a demand on the present Board of Directors of CenterPoint to institute this action as required by Tex. Bus. Corp. Act Art. 5.1(C)(2), plaintiff maintains that this demand constitutes a futile and useless act." [18] Paragraph 74 of plaintiff's Complaint does not allege either that Carroll was the president, vice-president, or registered agent for the corporation, or that plaintiff attempted to serve its demand on any of the persons who are identified by the Business Corporation Act as "agents ... upon whom any ... demand required ... by law to be served upon the corporation may be served." Tex. Bus. Corp. Act Art. 2.11(A)(Vernon 1980). Even assuming that plaintiff's demand letter was actually delivered to Carroll's office, the court concludes that a demand sent only to him is insufficient to satisfy the requirement that a pre-suit demand be filed with the corporation because plaintiff makes no showing that Carroll served as one of the corporate officers named by Article 2.11(A) as competent to receive a demand made on the corporation.

(b) Authority to Represent the Board of Directors

■ "A demand is sufficient if the board of directors had a fair opportunity to consider the shareholder's claims." *Pace*, 999 S.W.2d at 621. *Accord Kamen*, 111 S.Ct. at 1716 (the purpose of the demand requirement is to give the directors a fair opportunity to initiate the action that has

now been initiated by the plaintiff shareholder). *See also Zauber v. Murray Sav. Ass'n*, 591 S.W.2d 932, 935 (Tex.Civ.App.—Dallas 1979), *writ ref'd per curiam*, 601 S.W.2d 940 (Tex.1980)("The reason for requiring a shareholder to make demand on the corporation's directors prior to instituting a derivative suit is that the cause of action belongs to the corporation.").

■ Plaintiff makes no showing that transmission of a single demand to the chairman of the board provided the board of directors with a fair opportunity to consider its claims. Jurisdictions that have addressed this issue have determined that the demand must be directed to the board as a whole, and not merely to the board's chairman, the corporate officers, or the majority shareholder. *See Kaster v. Modification Systems, Inc.*, 731 F.2d 1014, 1017–19 (2d Cir.1984) (holding that demand on an individual who was president, chairman of the board, and owner of 71% of the voting stock of the corporation was insufficient under Rule 23.1 of the Federal Rules of Civil Procedure); *Greenspun*, 634 F.2d at 1209 (stating that demand on the president/director and general counsel of the corporation was insufficient under Rule 23.1 of the Federal Rules of Civil Procedure); *Shlensky v. Dorsey*, 574 F.2d 131, 141 (3d Cir.1978) (noting that four letters sent to the company's president were insufficient under Rule 23.1 of the Federal Rules of Civil Procedure).

Even assuming that plaintiff's demand letter was actually delivered to the chairman of the board's office, the court concludes that a demand sent only to the chairman of the board is insufficient to satisfy the requirement that a pre-suit demand be filed with the corporation because

---

18. Verified Shareholder Derivative Complaint, Docket Entry No. 1, p. 42, ¶ 74. Although plaintiff's Complaint references Tex. Bus. Corp. Act Art. 5.1(C)(2), this appears to be a mistaken reference either to Article 5.14(B)(2) of the unamended Act (Vernon 1980), or to 5.14(C)(1) of the amended Act (Vernon Supp.2003).

the chairman of the board is not a person invested with the full power of the board to control litigation of corporate causes of action. *See Pace*, 999 S.W.2d at 622 (a corporation's directors have the right to control litigation of corporate causes of action). *See also Stone v. Holly Hill Fruit Products, Inc.*, 56 F.2d 553, 554 (5th Cir. 1932)("The complainants should have appeared before the seven directors then chosen and urged their objection ...").

3. *Sufficiency of Content*

Because the court concludes that plaintiff did not attempt to serve its demand on a person of sufficient authority to satisfy the pre-suit demand requirement of Article 5.14(C)(1) of the Texas Business Corporation Act, the court does not reach the sufficiency of the demand's content. *See Greenspun*, 634 F.2d at 1209 (sufficiency of demand turns on sufficiency of the authority to whom the demand is presented, and the sufficiency of the demand's content).

**D. Remedy for Insufficient Demand**

 "The remedy for an inadequate demand is dismissal." *Pace*, 999 S.W.2d at 621. *See also Zauber*, 591 S.W.2d at 936 (failure to make demand when demand is required precludes action from being maintained); *Stone*, 56 F.2d at 554 ("Minority stockholders may not ... ask a court of equity to interfere in the management of their corporation until they have earnestly and unsuccessfully sought redress from the Board of Directors ... For defect in this respect ... [an action] will be dismissed.").

**IV. *Conclusions and Order***

 Because plaintiff's Complaint contains only paragraph 74's conclusory statement that "plaintiff has made a demand on the present Board of Directors of CenterPoint to institute this action," the court concludes that plaintiff has failed to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 23.1. Plaintiff's assertion that it faxed a single demand letter to an unidentified woman who said that she would deliver the letter to Carroll's office fails to establish that plaintiff exhausted all the means within its reach to obtain redress within the corporation. Moreover, even assuming that plaintiff's demand letter was actually delivered to Carroll's office, the court concludes that a demand sent only to the chairman of the board of directors is insufficient to satisfy Article 5.14(C)(1)'s requirement that a presuit demand be filed with the corporation because the chairman of the board is neither one of the persons named by Article 2.11(A) as competent to receive a demand for the corporation, nor a person invested with the full power of the board to control the litigation of corporate causes of action. Because the remedy for an insufficient pre-suit demand is dismissal, Defendants' Motion to Dismiss (Docket Entry No. 14) is GRANTED, and this action will be dismissed without prejudice.

### *FINAL JUDGMENT*

 In accordance with the Memorandum and Order granting Defendants' Motion to Dismiss, this action is **DISMISSED** without prejudice.

 This is a **FINAL JUDGMENT.**